UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATHARINE BISCONE, *Individually and on
behalf of all others similarly situated,*

Plaintiff,

-against-

JETBLUE AIRWAYS CORPORATION, and
DOES 1 through 20,

Defendants.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ AUG 1 3 2009 ★
BROOKLYN OFFICE

Civil Action No. 09-

**NOTICE OF REMOVAL**

GLASSER, J.
GO, M.J.

09  3533

Defendant JetBlue Airways Corporation ("JetBlue") hereby removes this case from the Supreme Court of the State of New York, County of Queens, to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1331, 1367, 1441(b) and (c), and 1446.

## BACKGROUND

1.      On February 13, 2008, Plaintiff Katharine Biscone ("Plaintiff") filed a Summons with Notice asserting a putative class action against JetBlue in the Supreme Court of the State of New York, County of Queens ("State Court"), entitled *Katharine Biscone, individually and on behalf of all others similarly situated v. JetBlue Airways Corporation, and Does "1" through "20"*, Index No. 3776/2008 (the "State Court Action").

2.      This action arises from JetBlue flights departing from John F. Kennedy International Airport, New York on February 14, 2007 that were delayed due to severe weather conditions. Plaintiff alleges that she and other individuals were passengers on JetBlue flights that experienced ground delays for approximately three to eleven hours. Plaintiff seeks damages arising from the delay on behalf of herself and all others similarly situated.

3.  The Eastern District of New York embraces the place where the State Court Action is pending.

4.  This Notice of Removal is signed subject to Federal Rule of Civil Procedure 11, and is filed within thirty (30) days of JetBlue's receipt of a copy of the initial pleading setting forth the claim for relief upon which such action is based, as provided by 28 U.S.C. § 1446.

## SERVICE OF THE SUMMONS WITH NOTICE

5.  On February 13, 2008, Plaintiff filed a Summons with Notice (without a complaint), stating that Plaintiff, a New York resident, seeks judgment in the amount of fifty-million dollars ($50,000,000) for false imprisonment, emotional distress, negligence, gross negligence, fraud, deceit, prima facie tort and breach of contract arising out of the alleged confinement of Plaintiff, and others similarly situated, on JetBlue aircraft on February 14, 2007. No federal or treaty cause of action was asserted in the Summons with Notice. Plaintiff effected service of the Summons with Notice upon JetBlue by serving the Secretary of State of New York State on February 25, 2008. A copy of the Summons with Notice is attached hereto as Exhibit "A".

6.  On April 1, 2008, counsel to JetBlue filed and served by mail a Notice of Appearance and Demand for Complaint ("Demand") pursuant to New York Civil Practice Law and Rules ("CPLR") § 3012(b). Plaintiff was required to serve a complaint within 25 days after service of the Demand, which she did not do. A copy of the Notice of Appearance and Demand for Complaint is attached hereto as Exhibit "B".

2

## PLAINTIFF'S MOTIONS SEEKING LEAVE TO SERVE A COMPLAINT

7. On or about May 12, 2008, Plaintiff filed and served a motion for leave to serve a complaint beyond the time permitted under the CPLR ("Plaintiff's First Motion"). A copy of Plaintiff's First Motion is attached hereto as Exhibit "C".

8. By Order dated September 12, 2008 and entered September 17, 2008, the State Court denied Plaintiff's First Motion and held that Plaintiff was not permitted to serve a complaint. A copy of the September 12, 2008 Order is attached hereto as Exhibit "D".

9. On or about November 19, 2008, Plaintiff filed and served an untimely motion to reargue as well as a motion to renew Plaintiff's First Motion ("Plaintiff's Motion to Reargue"). A copy of Plaintiff's Motion to Reargue is attached hereto as Exhibit "E".

10. On or about December 1, 2008, JetBlue served its opposition to Plaintiff's Motion to Reargue. JetBlue also filed and served a Cross-Motion to Dismiss the action on the basis that because Plaintiff was not permitted to serve a complaint, no action could be maintained. A copy of JetBlue's opposition to Plaintiff's Motion and JetBlue's Cross-Motion is attached here to as Exhibit "F".

11. On February 18, 2009, the State Court issued an Order in which it scheduled a conference on Plaintiff's Motion to Reargue and JetBlue's Cross-Motion to Dismiss. A copy of the February 18, 2009 Order is attached hereto as Exhibit "G".

12. By Order dated June 25, 2009 and entered July 2, 2009, the State Court denied JetBlue's Cross-Motion to Dismiss, granted Plaintiff's Motion to Reargue, and ordered Plaintiff to serve JetBlue with a complaint within 20 days of entry of the June 25, 2009 Order. A copy of the June 25, 2009 Order is attached hereto as Exhibit "H".

13.     Plaintiff served a Verified Complaint ("Complaint") via electronic mail on July 15, 2009. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b). A copy of the Verified Complaint and a Stipulation and Acknowledgment of Service are attached hereto as Exhibit "I".

## JURISDICTION

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff asserts in her Complaint that the claims of certain putative class members arise under and are governed by a treaty of the United States known as the Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter "Montreal Convention"). When the contract of transportation constitutes "international carriage" within the meaning of Article 1(2) of the Montreal Convention, the rights and liabilities of the parties are exclusively governed by the provisions of this Convention. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999). For those putative class members with contracts reflecting "international carriage," Plaintiff advises that the "Montreal Convention of 1999 supersedes the [JetBlue] domestic contract of carriage" regarding liability for delay and any recovery for such delay is limited to approximately $6,600 per class member. Complaint, ¶ 66.

15.     It is undisputed that Plaintiff did not assert claims arising under and governed by the Montreal Convention in her Summons with Notice. As a result, Defendant could not have determined from that document whether the action could be removed to federal court on the basis of federal question jurisdiction. Accordingly, Plaintiff's Summons with Notice cannot be considered Plaintiff's "initial pleading" for purposes of removal because it did not provide JetBlue with the information necessary to "intelligently ascertain removability" on the basis of

4

federal question jurisdiction. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001).

16.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims asserted in the Complaint.  The claims of certain putative class members that arise out of the Montreal Convention clearly arise out of the same nucleus of operative fact as the remaining state law claims and the claims of non-Montreal Convention putative class members—that is the alleged delay of JetBlue flights departing from John F. Kennedy International Airport, New York on February 14, 2007—and will require virtually identical proof.  The state law tort theories asserted in the Complaint are not novel or complex, nor can Plaintiff's state law claims fairly be said to predominate over the federal claims of certain putative class members. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350-51 (1988) (removal of action asserting single federal claim and numerous state claims which derived from same nucleus of operative fact) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966)); *Dunlop v. City of New York*, 2006 WL 2853972, at *4-5 (S.D.N.Y. 2006) (retaining jurisdiction over federal civil rights plaintiff's state law claims, where the federal claims "will require virtually the same proof as the state law claims," "are not merely peripheral," and "arise out of a series of events that are interrelated"); *Ansoumana v. Gristede's Operating Corp.* 201 F.R.D. 81, 93 (S.D.N.Y. 2001) (holding that where some class members asserted state law claims only but others asserted federal claims, the court had supplemental jurisdiction over the state law claims because the federal and state claims arose from the same nucleus of operative facts, were substantially related to each other, and would be treated as one case and controversy).  Moreover, where federal claims apply to some parties and state law claims apply to other parties, the assertion of jurisdiction over the state law

claims is proper. *Smith v. City of New York,* 950 F. Supp. 55, 59 (E.D.N.Y.1996) (citing *Baylis*

*v. Marriott Corp.,* 843 F.2d 658, 664 (2d Cir.1988)).

## <u>NOTICE AND RESERVATION OF RIGHTS</u>

17.     By filing this Notice of Removal, JetBlue reserves all of its defenses.

18.     Pursuant to 28 U.S.C. § 1446(d), JetBlue will serve a copy of this Notice of

Removal on Plaintiff and also file a copy of this Notice with the Clerk of the Supreme Court of

the State of New York, County of Queens.

WHEREFORE, defendant JetBlue Airways Corporation prays that the action now

pending against it in the Supreme Court of the State of New York, County of Queens be removed

to this Court.

Dated: New York, New York
         August 12, 2009

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *Christopher G. Kelly*
        Christopher G. Kelly
        Judith R. Nemsick
        Christine Tramontano
195 Broadway
New York, NY 10007
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Attorneys for Defendant*
*JetBlue Airways Corporation*

# 8765108_v3

*Index #5776/2008*

STATE OF NEW YORK QUEENS COUNTY
SUPREME COURT   CLERKS OF QUEENS COUNTY   INDEX NO.
RECEIVED

2008 FEB 13 P 1: 17

KATHARINE BISCONE,
individually and on behalf of all others similarly situated,

                          Plaintiff,

                                              SUMMONS WITH NOTICE

    -against-

JETBLUE AIRWAYS CORPORATION, and Does "1" through "20",

                          Defendants.

---

To the above mentioned defendant:

        You are hereby summoned to appear in this action by serving notice on plaintiff's attorney within twenty days after service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York.

        Take notice that the object of this action and relief sought is to recover damages for false or wrongful imprisonment, emotional distress, negligence, gross negligence, fraud, deceit, prima facie tort, and breach of contract arising out confinement of Plaintiff, a resident of New York State, and other similarly situated JetBlue passengers, by Defendant(s) in aircraft under the control of Defendant(s) at JFK Airport on February 14th, 2007 in excess of four hours, and that in case of your failure to appear judgment will be taken against you in the amount by default in the amount of Fifty Million Dollars ($50,000,000.00), plus exemplary or punitive damages in an amount to be determined by the court, plus costs and disbursements of this action and attorneys' fees as provided by law.

        The basis for venue designated is that Queens County is the principal place of business of the named Defendant and the location of the incident complained of.

Dated: February 12, 2008

                          _Paul Hudson_
                          _____
                          Paul S. Hudson, Esq.
                          Law Offices of Paul S. Hudson PC
                          Attorney for Plaintiff
                          Address: 4411 Bee Ridge Road #274
                          Sarasota, Florida 34233
                          Telephone No.: 410-940-8934
                                          941-349-1947

State of New York - Department of State
Division of Corporations

Party Served:
JETBLUE AIRWAYS CORPORATION

Plaintiff/Petitioner:
BISCONE, KATHARINE


JETBLUE AIRWAYS CORPORATION
JIM HNAT
118-29 QUEENS BLVD.
FOREST HILLS,  NY 11375


Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 02/25/2008 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.



                                        Very truly yours,
                                   Division of Corporations



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHARINE BISCONE,
individually and on behalf of all others similarly situated

              Plaintiff,

            -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
through "20",

              Defendants.

Index No. 3776/2008

**NOTICE OF APPEARANCE
AND
<u>DEMAND FOR COMPLAINT</u>**

     **PLEASE TAKE NOTICE** that defendant JetBlue Airways Corporation, appearing by its attorneys Holland & Knight LLP, hereby demands pursuant to Section 3012(b) of the New York Civil Practice Law and Rules that a copy of the complaint be served upon Holland & Knight LLP, at 195 Broadway, New York, New York 10007.

Dated: New York, New York
      April 11, 2008

                      HOLLAND & KNIGHT LLP

                      By:
                           Christopher G. Kelly
                           Christine Tramontano
                      195 Broadway
                      New York, New York 10007
                      (212) 513-3200

                      *Attorneys for Defendant JetBlue Airways
                      Corporation*

TO:     Paul Hudson, Esq.
         Law Offices of Paul S. Hudson PC
         *Attorney for Plaintiff*
         4411 Bee Ridge Road #274
         Sarasota, FL 34233
         (410) 940-8934
         (941) 349-1947



FILE COPY
H G H & K
SERVED BY MAIL/HAND_____
SUBMITTED/FILED_____
RECEIVED BY MAIL/HAND_____
POST MARKED_____
**ENTERED**
BY:

# 5238328_v1

## ATTORNEY'S AFFIRMATION OF SERVICE VIA MAIL

State of  New York      )
                        ) SS.:
County of New York  )

RUDY D. GREEN, an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury:

That on April 1, 2008, I served the attached Notice of Appearance and Demand for Complaint, by mailing true copies of the same in a duly enclosed and sealed wrapper with first-class postage prepaid thereon and addressed to:

Paul Hudson, Esq.
4411 Bee Ridge Rd.
#274
Sarasota, FL  34233

RUDY D. GREEN

Dated: April 1, 2008

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY          INDEX NO. 3776/2008

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,

                                             NOTICE OF MOTION

      -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.

PLEASE TAKE NOTICE that Plaintiff shall move at a Motion Term of the New

York State Supreme Court, Queens County, located at 88-11 Sutphin Boulevard,

Jamaica, New York 11435 to be held on June 4th, 2008, at the opening of court of that

day, or at a time and place as soon thereafter as counsel may be heard by the assigned

Judge, pursuant to CPLR Sections 3012(d), 2004 and 2005, for an order granting Plaintiff

leave to file and serve a complaint in the subject action by June 16th, 2008, or for such

other time and relief as the court deems just and proper in the circumstances, and as set

forth in detail in the accompanying affirmation, memo of law and proposed order.

Date:  May 6, 2008                    S/
Sarasota, Florida
                                      _____
                                      Paul S. Hudson, Esq.
          104280-14                   Attorney for Plaintiff
                                      4411 Bee Ridge Road #274
                                      Sarasota, Florida 34233
                                      410-940-8934  941-349-1947
                                      Globetrotter1947@hotmail.com

        5-12-08
    JW            l

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY          INDEX NO. 3776/2008

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,

                                                **MEMO OF LAW**

         -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.

As and for a memo of law in support of Plaintiff's motion to extend time to file and serve

a complaint, Paul S. Hudson, Esq., attorney for plaintiff, respectfully submits as follows:

**I.  The motion to extend the time to plead meets the standards for granting such
motions.**

CPLR 3012(d), 2004 and 2005 provide for the trial court to grant a party time to late file

and serve a pleading or cure a default upon a showing of reasonable excuse for delay or

default, including delay or default from a law office failure.

The standards for granting such this motion as shown in the accompanying affirmation of

a) lack of prejudice, b) lack of willfulness, d) the existence of a meritorious claim, and e)

the public policy of favoring resolution of cases on the merits are all present here.

See Stuart v Kushner, 35 AD2d 535, 833 NYS2d 187 (2nd Dept., 2007) [it was an abuse

of discretion for trial court to deny motion to late file a pleading several months late].

S/

Dated: May 6, 2008

Paul S. Hudson, Esq.
Attorney for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934  941-349-1947
Globetrotter1947@hotmail.com

STATE OF NEW YORK
SUPREME COURT        QUEENS COUNTY          INDEX NO. 3776/2008

---

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,

                                                  AFFIRMATION

        -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.

---

Paul S. Hudson, an attorney admitted to practice in the courts of New York State, does

hereby affirm under penalty of perjury as follows:


1. I am the attorney for the Plaintiff in this case, and submit this affirmation is in support

of a motion to extend time to file to serve a complaint in the subject action which was

filed on February 13th, 2008, with a Summons with Notice dated February 12, 2007.

Copy affixed hereto as Exhibit A.


2. The Summons with Notice was duly served on the Defendant JETBLUE AIRWAYS

CORPORATION (JETBLUE) on  February 25th, 2008.  Copy of Affidavit of Service

affixed hereto as Exhibit B.

3. On or about April 1, 2008, the law firm of Holland & Knight, as attorneys for Defendant for JETBLUE served by regular mail a Demand for a Complaint pursuant to CPLR 3012, which was received by my office on or about April 9th, 2008 but was misfiled.

4. I contacted the Plaintiff several times in March and April to obtain necessary detailed information to draft a complaint, but due to hers and my intensive work and travel schedules and her need to research specific expenses incurred, I was unable to obtain the needed information until May 3, 2008.

5. I have also called the law firm for the Defendant regarding the delay in serving a complaint and was just advised that they consent to the granting of this motion provided that the defendant has 65 days to answer or move and that the complaint in the Biscone case is served this week.

6. There would be no prejudice to the Defendant in granting this motion to extend the time to file and serve a complaint beyond the 20 days from service of demand which ran on or about April 25, 2008.

7. This is a class action arising out detentions by Defendant in aircraft of the plaintiff and approximately 1300 other passengers on the tarmac at JFK Airport on February 14th, 2007 for 3 to 11 hours.  Copy of news accounts enclosed as Exhibit C.

8. I have investigated the allegations of the plaintiff in the proposed complaint being submitted herewith (Copy affixed hereto as Exhibit D) and believe them to be meritorious.

9. The damage demand amount after further investigation has been reduced from the amount of $50 Million to under $5 Million.

10. There was no willfulness by Plaintiff or her attorney in not filing and serving a complaint in this case within the 20 days provided for in CPLR 3012.

11. I have previously represented other passengers in such cases, and attempted in February and March to settle this case in direct contact with the in house counsel for JETBLUE who called me in February, 2008.

WHEREFORE, for the reasons stated herein as there is a reasonable excuse for the short delay in filing a complaint in this case and there is no prejudice to the Defendant, and for the reasons stated in the accompanying memo of law, the motion to extend the time to file and serve a complaint should be granted.

Dated:  May 6, 2008
Sarasota, Florida

_____
Paul S. Hudson

03/06/2008  16:53 FAX 905 51    583                                        ☑ 005/007

t:paul hudson esq. To:George Lynch (18668370331)          15:16 03/06/08GMT-05 Pg 05-07

STATE OF NEW YORK
SUPREME COURT                QUEENS COUNTY    INDEX NO. 3776/2008

KATHARINE BISCONE,
individually and on behalf of all others similarly situated,

                              Plaintiff,

                                                    SUMMONS WITH NOTICE

        -against-

JETBLUE AIRWAYS CORPORATION, and Does "1" through "20",

                              Defendants.

To the above mentioned defendant:

        You are hereby summoned to appear in this action by serving notice on plaintiff's attorney within twenty days after service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York.

        Take notice that the object of this action and relief sought is to recover damages for false or wrongful imprisonment, emotional distress, negligence, gross negligence, fraud, deceit, prima facie tort, and breach of contract arising out confinement of Plaintiff, a resident of New York State, and other similarly situated JetBlue passengers, by Defendant(s) in aircraft under the control of Defendant(s) at JFK Airport on February 14th, 2007 in excess of four hours, and that in case of your failure to appear judgment will be taken against you in the amount by default in the amount of Fifty Million Dollars ($50,000,000.00), plus exemplary or punitive damages in an amount to be determined by the court, plus costs and disbursements of this action and attorneys' fees as provided by law.

        The basis for venue designated is that Queens County is the principal place of business of the named Defendant and the location of the incident complained of.

Dated: February 12, 2008             ___s/_____
                                     Paul S. Hudson, Esq.
                                     Law Offices of Paul S. Hudson PC
                                     Attorney for Plaintiff
                                     Address:  4411 Bee Ridge Road #274
                                     Sarasota, Florida 34233
                                     Telephone No.:  410-940-8934
                 Filed 2/13/08       941-349-1947

Ex. A

03/06/2008  16:52 FAX  905 5?  7583          ☑002/007

i:paul hudson esq. To:George Lynch (18668370331)      15:16 03/06/08GMT-05 Pg 02-07

COPY

STATE OF NEW YORK
SUPREME COURT      COUNTY OF QUEENS      INDEX NO. 3776/2008

---

KATHERINE BISCONE, individually and on behalf of
All others similarly situated,

         Plaintiff,

                     **AFFIDAVIT OF SERVICE**

     -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

         Defendant.

---

I, George Lynch, being duly sworn, depose and say: that I am over the age of 18 years

and not a party to this action, and that within the boundaries of the State of New York, I

was authorized by law to perform said service, that I served the New York State

Secretary of State, with 3 copies of the SUMMONS WITH NOTICE dated February 12,

2008, a copy of which is affixed hereto, by leaving with Donna Christy, employee of the

NYS Department of State, Corporations Bureau, located at 99 Washington Avenue, ___

Floor, Albany, New York on February 25th, 2008, at 2:15 pm.

                              George Lynch

Sworn to before me this 6th day of march 2008

Notary Public, State of New York

PATRICIA A. HOURIGAN
Notary Public, State of New York
No. 4903954
Qualified in Albany County
Commission Expires August 24, 2009

                     Ex. B

HighBeam Research



**More than Search ... it's Research**

# We waited too long to ask airport for help, JetBlue founder admits

From: Deseret News (Salt Lake City)   Date: February 16, 2007   Author: David B. Caruso Associated Press



Newspaper

NEW YORK -- Hundreds of passengers who were stranded on parked JetBlue planes for up to 10 1/2 hours could have been evacuated sooner if the airline had not waited to ask airport officials for help, the company founder said Thursday.

The airline acknowledged that it hesitated nearly five hours before calling in shuttle buses to unload 10 jets that spent the day sitting on runways at Kennedy Airport because of icy weather and gate congestion.

While they waited, exasperated passengers sat within sight of the terminal without food, adequate restrooms or a reasonable explanation as to why they were not moving.

JetBlue officials finally phoned the Port Authority of New York and New Jersey, which runs area airports, at 3 p.m. to ask for staircases and buses to get people off the planes and back to the terminal.

"We should have called them sooner," said JetBlue founder and CEO David Neeleman.

Once they did, some passengers were free within 30 minutes. Others had to wait while the Port Authority shoveled out snow- covered equipment and rounded up drivers.

Many of the stranded passengers did not return to the terminal until 6 p.m. Most had boarded their aircraft around 8 a.m. Some of the jets were incoming flights that had been on the ground since 10 a.m. Six flights were stranded for more than eight hours.

Neeleman said he could not apologize enough.

"We should have done better," he said. "There was an opportunity to do better."

JetBlue's problems began developing when snow and ice pellets made takeoffs difficult but did not stop landings, Neeleman said, resulting in the airline accumulating 52 airplanes at a terminal with 21 gates.

Neeleman said the airline held out too long for a break in the icy conditions, then had planes "freeze to the ground" where they had been waiting.

Some passengers spent an hour or two on delayed flights before being brought back to the terminal. Others saw their flights canceled.

Weather delays of up to six hours continued to plague JFK on Thursday. More than 300 flights were canceled. At Newark Liberty International Airport in New Jersey and LaGuardia Airport, delays averaged more than two hours.

Ex. C

HighBeam Research

Terminals at JFK filled with passengers trying to arrange alternative flights. JetBlue canceled 195 of its 568 planned flights in an attempt to avoid being overwhelmed for a second straight day.

Other airlines experienced problems, too. Mark Mannix, a government affairs officer for New York's Metro-North Railroad, said he spent hours stranded aboard an American Airlines jet.

The plane was scheduled to depart for Miami at 5:45 a.m. It did not push back from the gate until nearly 7:45 a.m. and soon halted for another delay. The pilot finally returned to the terminal at 10:45 a.m. after deciding it was not safe to fly.

Mannix said the airline made food available -- at a price. He said he paid $3 for a cookie.

"We're pretty much cattle. We're at their mercy," he said. "They don't seem like they have a plan or are prepared. Like this is the first time they had a snowfall."

American Airlines spokesman Tim Wagner said an icy runway prevented the plane from taking off.

On Thursday, JetBlue promised a full refund and a free round- trip flight to customers delayed aboard an aircraft for more than three hours. Passengers with canceled flights were being offered a refund. All other passengers with travel booked through Monday were being offered a chance to cancel and rebook, without having to pay the usual fee.

Asked why the airline did not summon staircases and shuttle buses to unload the 10 planes with extraordinary delays sooner, Neeleman said, "That's a very good question."

"I think the ice condition made it very difficult for us," he said. "We were worried about our customers falling down the stairs and hurting themselves."

The Federal Aviation Administration has no rules regarding how long airlines may leave passengers aboard a grounded craft, but Port Authority guidelines consider passengers officially "stranded" if they remain aboard a parked plane for more than two hours.

Copyright 2007 Deseret News (Salt Lake City). Provided by ProQuest LLC. For permission to reuse this article, contact Copyright Clearance Center.

Academic and Education   Business   Government   Health   Lifestyle and Personal Interest   News
Sports and Leisure   Technology and Science   News

HighBeam™ Research, Inc. © Copyright 2008. All rights reserved.

www.highbeam.com

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY          INDEX NO. 3776/2008

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,                              COMPLAINT

     -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.

As a for a Complaint, Plaintiff Katharine Biscone, on behalf of herself and all others

similarly situated, by and through her attorney Paul S. Hudson does allege as follows:


## Parties and Jurisdiction


1. Plaintiff is and was for all times relevant to this action a citizen of the United States

and of the State and City of New York, residing at East 20th Street, City and County of

New York.


2. Defendant JetBlue Airways Corporation (hereinafter "JB") is a business corporation

and a common carrier offering scheduled air transportation to the general public, was

incorporated in the State of Delaware and has its principal place of business in the State

of New York, County of Queens. At all times relevant to this action Defendants were

doing business in the State of New York.


Ex. D

## Class Action Allegations

3..    This action is being maintained as a class action pursuant to the New York

Civil Practice Law and Rules Art. 9.  In that regard, the Plaintiff alleges the following:

a.  Approximately 1,300 people were affected by the actions of the Defendants as

set forth below and therefore the class is so numerous that joinder of members

is impracticable;

b.  There are common issues of law and fact that predominate over any questions

affecting only individual members;

c.  The claims of Katharine Biscone as a representative party are typical of the

claims of the class;

d.  Katharine Biscone has agreed to serve as class representative and has agreed to

fairly and adequately protect the interests of the class;

e.  A class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

4.    In support of the class action allegations, Plaintiff incorporates by

reference the statements and allegations that follow.

## Factual Allegations and Events of February 14, 2007

5.  .    Plaintiff purchased a ticket for air transportation from JB in New York on JB

flight 351 scheduled to depart from John F. Kennedy International Airport (JFK), at 6:45

AM  to Burbank, California.

6.      Plaintiff arrived at the JetBlue Terminal at JFK at about 4:45 AM on February 14, 2007, checked in and boarded the aircraft at 6:15 AM.

7. At approximately 6:30 AM all passengers were boarded and the JB aircraft pulled away from the terminal gate at approximately 6:50 AM.

8. From 6:50 AM to approximately 5:30 PM, Plaintiff was confined to the JB aircraft on the ground at JFK.

9. JB personnel for the first three hours, stated that the weather was "holding us up."

10. For the first 5 hours, Plaintiff was forced by Defendants to remain in her seat with her seat belt fastened: during which time JB personnel claimed this was necessary so that the aircraft could take off on 5 minutes notice.

11. Plaintiff observed numerous other aircraft returning to the terminal gates during this first 5 hour period and subsequent thereto.

12. After 5 hours of confinement on the ground, JB personnel stated that if anyone wanted to get off the plane and take another flight, to let the crew know.

13. Another passenger nearby to Plaintiff rang his flight attendant call button to request to exit the aircraft, however, the flight attendant bullied and intimidated him to stay on the plane by stating that if he got off the aircraft JB would not help him get another flight, that he would not be able to get another flight until the weekend several days later.

14. When passengers demanded to be released from the aircraft, JB personnel refused and stated to Plaintiff and other passengers that if anyone tried to force their way off the aircraft, they would go to prison for 20 years because of the Patriot Act.

15. JB personnel stated numerous times that during the 11 hours of confinement that Plaintiff's aircraft was "next in line" for a gate to return to the terminal and stated the aircraft would  return to the terminal or take off soon, but this never occurred.

16. During the 11 hours of confinement, JB only served a few snacks after 3 hours and after 8 hours, and very small amounts of water.

17. After approximately 8 hours of confinement, the aircraft Heating, Cooling and Ventilation system shut down and the air became sweltering and it became difficult for some passengers and Plaintiff to breathe.

18. After approximately 10 hours, the JB captain stated to Plaintiff and other passengers, that the toilet tanks were full and "If you have to do a No. 2 in the bathroom, you cannot for the tanks are full and will overflow."

19. After 10 hours, the JB captain announced that under FAA regulations the legal limit for that crew's flight time had been reached and that JB was locating another crew to take over the flight, however, no other flight crew appeared and after 11 hours buses arrived and took Plaintiff and other passengers to the terminal.

20. Plaintiff and other passengers called JB reservations from the aircraft numerous times and also went on the JB website to re-book flights, but were refused reservations on other flights for at least three days and were not advised of any other alterative transportation.

21. At the terminal, Plaintiff and other passengers were required to wait another 2 hours to obtain return of their baggage.

22. JB, upon information and belief, was under no orders or requirements of any government agency to confine Plaintiff and did so for its own pecuniary benefit.

## Affects on Plaintiff and other passengers due to confinements

22a. Plaintiff is a comedy writer in the television and motion picture industry, and she was traveling to California to attend her best friend's premier of a new motion picture her friend starred in on evening of February 15th, 2007, and this was a once in a lifetime event.

23. Plaintiff was also traveling to California to attend important meetings on February 15th and 16th, 2007.

24. Due to JB's actions Plaintiff was unable to obtain alternate transportation to attend her friend's premier or her business meetings and lost business opportunities that took over a year to arrange with a major television producer.

25. Plaintiff had had major shoulder surgery six months prior to February 14th, 2007, and her shoulder and hip flexors started to ache and her legs began cramping after about 4 hours of confinement.

26. Plaintiff was aware of the danger of blood clots after 4-5 hours of confinement on aircraft and suffered from mental distress, anxiety and near panic as she was forced by JB to remain in her seat for over 5 hours with her seatbelt fastened.

27. Plaintiff and other passengers suffered severe mental and physical distress as a result of JB's actions on February 14th, 2007.

28. After her 11 hour ordeal of confinement by JB, Plaintiff was broken in body and spirit, suffered physical pain for six months afterwards as well as panic and anxiety attacks whenever she is in crowded places for the first time in her life.

29. Plaintiff was treated and incurred expenses for these conditions after and as a result of her ordeal of confinement by JB as follows:

    a) For hips and shoulder:  5 muscle activation technique sessions: $775, Training sessions with a physical therapist- $95 per session for 20 sessions; physical therapy at the Hospital for Joint Diseases 15 sessions.

    b) Psychiatric – 6 sessions at $225 per session, and expenses for medicine of over $600 over insurance reimbursements.

    b) Lost earnings of approximately $30,000.

30.  Plaintiff witnessed numerous passengers in physical and emotional distress, including elderly persons, young mothers with infants, and others suffering potential mental crises requiring an emergency Alcoholics Anonymous meeting in the rear of the aircraft.

**As and for a first cause of action, False Imprisonment**

30a. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 30 as if fully set forth herein.

31. JB intentionally confined Plaintiff and other similarly situated persons on approximately 10 aircraft for 3 to 11 hours on the ground at JFK on February 14th, 2007.

32. Plaintiff and others similarly situated were conscious of said confinement and were harmed by it.

33. Said confinement was not a transitory or harmless confinement and was unreasonable in the circumstances.

34. Said confinement was unlawful and not privileged.

35. Said confinement was not based on safety or security or other lawful considerations, but rather for the financial benefit to JB and its employees and to the detriment of Plaintiff and others similarly situated.

36. Said confinement was complete and Plaintiff and others similarly situated had not reasonable means of escape.

37. Said confinement after 3 hours was without the lawful consent of Plaintiff and others similarly situated.

38. JB wrongfully obtained acquiescence of Plaintiff and other passengers similarly situated by false pretenses, deceit, fraud or mistake and/or intimidation under threat of arrest.

39. Said confinement was not based on any federal aviation law or regulation, order or requirement but was solely done at the instigation of Defendants.

40. Said confinement was in violation of New York State criminal laws against reckless endangerment and false imprisonment including Penal Law Sections 135.05, 120.20 and General Business Law Sec. 245, and there is no federal law or regulation governing lengthy confinements on the ground of passengers by air carriers.

41. JB had the power to safely return passengers to the terminal but refused to do so.

42. JB is guilty of the tort of false imprisonment under the common law of the State of New York and under Restatement of Torts Second at Section 35 et seq.

43. As a direct result of the unlawful imprisonment of Plaintiff by Defendants, and the deprivation of her personal liberty and freedom in inhumane conditions, she has suffered physical injury to her body, mental suffering, inconvenience and out of pocket expenses and loss of earnings and business opportunities.

**As and for a second cause of action, Negligence**

43.   Plaintiff re-alleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

44.   Defendant JB as a common carrier owed a high duty of care for the safety and protection of its passengers including Plaintiff.

45.   This duty also created a special relationship between JB and Plaintiff and required JB to affirmatively aid and protect Plaintiff and others similarly situated against unreasonable risk of physical harm.

46.   This duty included not depriving Plaintiff and other similarly situated passengers of their personal liberty by confinement on the ground in an aircraft for a lengthy period of time without adequate water, food, restroom facilities and breathable air at proper temperatures.

47.   JB, its agents and employees in charge of Flight 351 and nine other flights held on the ground at JFK on February 14th, 2007, were aware of its passengers distress after 3 hours and the unlikelihood of it being able to take off due to weather conditions and its lack of personnel, but failed to return to the terminal, provide passengers with basic survival necessaries, or permit them to exit the aircraft using available buses and staircases.

48. Defendants' conduct was unreasonable and negligent and below the standard of care required of a common carrier.

48a. Defendant JB's CEO and founder David Neeleman admitted in public statements that JB did not telephone the JFK airport authority until 3:00 PM for buses and staircases to get stranded passengers off the aircraft and back to the terminal, and that "we should have called them sooner."

49. JB's conduct was reckless in that it risked the well being and safety of Plaintiff and other similarly situated passengers out of all proportion to the utility of providing for air transportation to Plaintiff and others similarly situated.

50. Defendants' conduct was the proximate cause of harm to Plaintiff and others similarly situated.

**As and for a third cause of action, Outrageous Conduct Causing Emotional Distress.**

51. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Defendants' conduct was extreme and outrageous, intentionally or recklessly causing severe emotional distress to Plaintiff and causing and/or aggravating bodily harm.

53. Plaintiff suffered from mental anguish, fright, anxiety, worry, chagrin, disappointment, panic attacks, pain and profuse sweating as a result of JB's conduct.

**As and for a fourth cause of action, Fraud and Deceit.**

54. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. JB controlled all information regarding flight delays and conditions and as such had a special relationship and duty to convey accurately material information to Plaintiff and others similarly situated.

56. JB under its Customer Service and Contract of Carriage had promised Plaintiff and others similarly situated that it would provide accurate and timely information on flight delays.

57. Defendant JB through its flight crew and operations employees (Defendant Does 1 - 20) on February 14, 2007 at JFK repeatedly represented to Plaintiff and others similarly situated that the aircraft would take off or return to the terminal gate shortly.

58. These representations were both material and false.

59. Defendants knew that these representations were false, or that they were being made with reckless disregard for their truth or falsity.

60. Defendants intended to deceive and induce Plaintiff others similarly situated to rely on these representations.

61. Plaintiff and others similarly situated reasonably relied on these false representations to their detriment.

62. Had Plaintiff and others similarly situated known the true facts, she would not have boarded the aircraft or at the worst been able to exit the aircraft after a few hours on the morning of February 14th, 2007 and arrange for alternate transportation to her destination the same day or the next day from several other east coast airports and/or another airline in time for her event and appointments the next day.

63. Plaintiff and others similarly situated sustained injury and loss as the proximate result of their reliance on these representations, and have been damaged thereby.

**As and for a fifth cause of action, Breach of Contract.**

64. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiff under its written contract was obligated to provide ticket refunds and other compensation to Plaintiff and other class members for its canceled flights including Flight 351 on February 14, 2007, and to provide other compensation, but failed to do so in large part.

66. As to class members who whose travel at JFK was part of an international trip, the Montreal Convention of 1999 supercedes the JB domestic contract of carriage as to liability for delays and provides for a damage liability limit of up to approximately $6,600 on a no fault basis. Copies of the contracts and the Montreal Convention are available and will be provided separately to the Defendant and the Court.

67. Defendant JB is guilty of breach of contract causing damage to Plaintiff and others similarly situated.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $74,000, individually and for an amount to be determined by the court but not to exceed $4,800,000 for all others similarly situated, including all compensatory and punitive damages

Dated:  May 6, 2008

Paul S. Hudson, Esq.
Law Offices of Paul S. Hudson, PC
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934
Globetrotter1947@hotmail.com

STATE OF NEW YORK
SUPREME COURT            QUEENS COUNTY            INDEX NO. 3776/2008

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,

                                                    **ORDER**    *184288-14*

          -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.                *5-12-08*
                                                       *JW*        *l*

Present:


The Plaintiff's motion to extend time to file and serve a Complaint to June 15th, 2008,

having come to be heard before this court on June ____, 2008, and after reading the

Plaintiff's Notice of Motion, Affirmation of Paul S. Hudson, Esq. and Memo of Law

dated May 6, 2008, and any responsive papers filed by the Defendant JETBLUE

AIRWAYS CORPORATION, and after due deliberation,

It is hereby ORDERED, that the Plaintiff shall file and serve a Complaint not later than

June 16th, 2008.


Dated:                              _____

At _____         Justice, Supreme  Court


ENTER:

TO: Paul S. Hudson, Esq.
Attorney for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934  941-349-1947
Globetrotter1947@hotmail.com


Holland & Knight
Attorneys for Defendant JETBLUE
AIRWAYS CORPORATION
195 Broadway, 24th Floor
New York, New York 10007
(212) 513-3200

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY          INDEX NO. 3776/2008

---

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

Plaintiff,

-against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

Defendants.

---

**AFFIRMATION OF SERVICE**

Paul S. Hudson, an attorney admitted to practice in the courts of New York State, with office and mailing address shown below does affirm under penalty of perjury that on May 8, 2008, he served a true copy of the within Notice of Motion, Affirmation with Exhibits, proposed Order and Memo of Law all dated May 6, 2008, on the Defendant JETBLUE AIRWAYS CORPORATION by overnight mail addressed to Holland & Knight, Attorneys for Defendant, 195 Broadway, 24th Floor, New York, New York 10007.

Dated: May 8, 2008

~~Sarasota, Florida~~
Annapolis, MD

Paul S. Hudson, Esq.
Attorney for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934  941-349-1947
Globetrotter1947@hotmail.com



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHERINE BISCONE, Individually and on behalf of
all others similarly situated,

                                        Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION, et al.,

                                        Defendants.

Index No. 3776/2008
IA Term, Part 7
Hon. Valerie Brathwaite Nelson

**NOTICE OF ENTRY**

        PLEASE TAKE NOTICE that the within is a true copy of an Order duly made and

entered in this action and filed in the Office of the Clerk of the Supreme Court of the State of

New York, County of Queens on September 17, 2008.

Dated:  New York, New York
        September 19, 2008

                                HOLLAND & KNIGHT LLP

                                By
                                   Christopher G. Kelly
                                   Christine Tramontano
                                Attorneys for Defendant
                                195 Broadway
                                New York, New York 10007
                                (212) 513-3200

TO:     Paul S. Hudson, Esq.
        12 Ressler Lane
        Valatie, NY 12184
        (518) 610-8288

        Paul S. Hudson, Esq.
        4411 Bee Ridge Road #274
        Sarasota, FL 34233
        (410) 940-8934
        *Attorney for Plaintiff*

2008 SEP 23 AM 9:00
QUEENS COUNTY CLERK
FILED

# 5619485_v1

2008/3776 COPY OF ORDER WINOTICE OF ENTRY WITH DATE OF SVC  Page 2 of 4)

 **ORIGINAL** '05.

Short Form Order

NEW YORK SUPREME COURT - QUEENS COUNTY

Present: Honorable **VALERIE BRATHWAITE NELSON** IA TERM, PART 7
                      Justice

-------------------------------------x
KATHERINE BISCONE, Individually and on
behalf of all others similarly situated,          Index No.: 3776/08

                                                  Motion: 6/24/08

                              Plaintiff,
                                                  Motion Seq. No.: 1

            -- against --
                                                  Cal. No.: 4

JETBLUE AIRWAYS CORPORATION, et al.,

                              Defendants.
-------------------------------------x

The following papers numbered 1 to 4 read on this motion by
plaintiff for an order granting her leave to file and serve a
complaint pursuant to CPLR §§§ 3012(d), 2004 and 2005.

                                                  PAPERS
                                                  NUMBERED


       Notice of Motion - Affidavits - Exhibits........ 1 - 4

       Upon the foregoing papers, it is ordered that this motion is
denied for the following reasons:

       Plaintiff served a summons with notice in this matter on
February 25, 2008. Thereafter defense counsel served a demand for
a complaint on or about April 1, 2008. Having failed to serve a
complaint within the time provided by statute, plaintiff moves
pursuant to CPLR §§§ 3012(d), 2004 and 2005 for additional to time
file and serve a complaint. A plaintiff who seeks to serve a
complaint after the expiration of the 20-day statutory period must
demonstrate that there was a reasonable excuse for the delay and a
meritorious cause of action (Tutora v Schirripa, 1 AD3d 349[2003]).
Generally, the court's determination of what constitutes a
reasonable excuse is discretionary (Aquilar v Nassau Health Care
Corp., 40 AD3d 788[2007]). In exercising its discretion, however,
the court should consider all relevant factors, including the
extent of the delay, the prejudice to the opposing party and the
lack of intent to abandon (Id). Nonetheless, under the appropriate
circumstances, it is within the court's discretion to excuse delays

2008/3776 COPY OF ORDER W/NOTICE OF ENTRY WITH AFFT OF SVC (Page 3 of 4)
2008/3776 ORDER SIGNED (Page 2 of 2)

in serving a complaint due to law office failure (<u>Devito v Marine Midland Bank</u>, 100 AD2d 530 [1984]). Plaintiff's counsel indicates that the intensive work and travel schedules of both himself and his client prevented the timely filing and service of the complaint. Even if this Court were inclined to find that the excuse offered for the delay in filing and serving the complaint was reasonable, plaintiff failed to demonstrate the existence of a meritorious claim. An attorney's affirmation that is not based upon personal knowledge is of no probative or evidentiary significance (<u>JMD Holding Corp v Congress Fin. Corp.</u>, 4 NY3d 373 [2005]). Similarly, the newspapers' accounts of the underlying incident are not sufficient to demonstrate the merit of plaintiff's claims. Accordingly, the motion is denied.

Dated: 9/12/08

.......................................
VALERIE BRATHWAITE NELSON, J.S.C.

QUEENS COUNTY CLERK
FILED
2008 SEP 17 AM 11: 33

2008/3776 COPY OF ORDER WITH NOTICE OF ENTRY W AFF OF SVC (Page 4 of 4)

## ATTORNEY'S AFFIRMATION OF SERVICE VIA U.S. MAIL

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

      CHRISTINE TRAMONTANO, an attorney duly admitted to practice law before the courts of the State of New York, affirms under penalty of perjury, that on September 19, 2008, I served the within NOTICE OF ENTRY on

                   Paul S. Hudson, Esq.
                   12 Ressler Lane
                   Valatie, NY 12184

                   Paul S. Hudson, Esq.
                   4411 Bee Ridge Road #274
                   Sarasota, FL 34233
                   *Attorney for Plaintiff*

by depositing a copy of the same in a securely sealed wrapper, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York.

Dated: New York, New York
       September 19, 2008

                                    CHRISTINE TRAMONTANO

# 5619506_v1

- 1 -

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY



_____

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,              **AMENDED**
                                                      **NOTICE OF MOTION TO**
                                                      **REARGUE/RENEW**
          -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"           Index No. 3776/2008
Through "20",

                                                    Assigned Justice:
                                          Hon. Valerie Brathwaite-Nelson
                              Defendants.      Part 7  Oral Argument
                                                      Requested
_____

        Upon the affirmation of Paul S. Hudson, Esq. dated October 21, 2008 with

exhibits A - E, and accompanying memorandum of law dated October 21, 2008, and all

prior motion papers and proceedings, the Plaintiff by her attorney Paul S. Hudson will

move this Court in Part 7 before the Hon. Valerie Brathwaite-Nelson at the New York

State Supreme Court, located at 88-11 Sutphin Boulevard, Jamaica, New York 11435 on

the 9th day of December, 2008, at 9:30 am or as soon thereafter as counsel may be heard

for an order granting Plaintiff leave to renew or reargue a motion dated May 6, 2008,

submitted without opposition on June 24th, 2008 and denied in an order dated September

12, 2008, for leave to extend time to serve and file a Complaint pursuant CPLR Secs.

3012(b), 2001-2005, and R2221.

        This is a tort and breach of contract action.

1

Please take further notice, that pursuant to CPLR R2214, responsive papers if any must be served on the undersigned at least 5 days prior to December 9th, 2008.

Dated:  November 19, 2008

__s/_____

Paul S. Hudson, Esq.
Law Offices of Paul S. Hudson, PC
4411 Bee Ridge Road #274
Sarasota, Florida 34233
(primary address for service of all papers)
410-940-8934
Globetrotter1947@hotmail.com


12 Ressler Lane, Valatie, NY 12184
518-610-8288
pshudson@yahoo.com


# 5857217_v1

2

NEW YORK STATE SUPREME COURT
QUEENS COUNTY

INDEX NO. 3776-08
Assigned: Hon. Valerie Brathwaite-Nelson

KATHARINE BISCONE, Individually and
On behalf of all others similarly situated,

Plaintiff,

-against-

JETBLUE AIRWAYS CORPORATION, and
Does "1" through "20",

Defendant.

AFFIRMATION OF SERVICE

Paul S. Hudson, an attorney admitted to practice in the courts of New York State does

affirm under penalty of perjury that on November 19th, 2008, he mailed a copy of the

within Amended Notice of Motion to Holland & Knight, Christine Tramantano,

Attorneys for the Defendant, 195 Broadway, New York, New York 10007 by electric

mail and first class mail.

Dated: November 19, 2008

Sarasota, Florida

_____

Paul S. Hudson, Esq.
Law Offices of Paul S. Hudson, PC
4411 Bee Ridge Road #274
Sarasota, Florida 34233
(primary address for service of all papers)
410-940-8934 941-349-1947
Globetrotter1947@hotmail.com

12 Ressler Lane, Valatie, NY 12184
518-610-8288
pshudson@yahoo.com

STATE OF NEW YORK
SUPREME COURT         QUEENS COUNTY

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

Plaintiff,

**NOTICE OF MOTION TO
REARGUE/RENEW**

-against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

Index No. 3776/2008

Assigned Justice:
Hon. Valerie Brathwaite-Nelson
Part 7. Oral Argument
Requested

Defendants.

Upon the affirmation of Paul S. Hudson, Esq. dated October 21, 2008 with exhibits A - E, and accompanying memorandum of law dated October 21, 2008, and all prior motion papers and proceedings, the Plaintiff by her attorney Paul S. Hudson will move this Court in Part 7 before the Hon. Valerie Brathwaite-Nelson at the New York State Supreme Court, located at 88-11 Sutphin Boulevard, Jamaica, New York 11435 on the 26th day of November, 2008, at 9:30 am or as soon thereafter as counsel may be heard for an order granting Plaintiff leave to renew or reargue a motion dated May 6, 2008, submitted without opposition on June 24th, 2008 and denied in an order dated September 12, 2008, for leave to extend time to serve and file a Complaint pursuant CPLR Secs. 3012(b), 2001-2005, and R2221.

This is a tort and breach of contract action.

1

Please take further notice, that pursuant to CPLR R2214, responsive papers if any must be served on the undersigned at least 5 days prior to November 26th , 2008.

Dated:  October 21, 2008

*Paul S Hudson*

Paul S. Hudson, Esq.
Law Offices of Paul S. Hudson, PC
4411 Bee Ridge Road #274
Sarasota, Florida 34233
(primary address for service of all papers)
410-940-8934
Globetrotter1947@hotmail.com

12 Ressler Lane, Valatie, NY 12184
518-610-8288
pshudson@yahoo.com

2

NEW YORK STATE SUPREME COURT
QUEENS COUNTY                                    INDEX NO. 3776-08
_____Assigned: Hon. Valerie Brathwaite-Nelson
KATHARINE BISCONE, Individually and
On behalf of all others similarly situated,

                                        Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION, and
Does "1" through "20",

                                        Defendant.
_____

**MEMORANDUM OF LAW**

The plaintiff by and through her attorney Paul S. Hudson, Esq. respectfully submits as

follows a memorandum of law in support of Plaintiff's Motion to Reargue/Renew its

prior motion for leave to extend time to file and serve a complaint in this action.


**I. The Plaintiff has shown she has a meritorious claim, that a complaint was served**

**on the Defendant with the extension of time agreed to in writing by the Defendant,**

**and there was a reasonable excuse for the short delay in serving the complaint.**


        A. The complaint was timely served within the time that Defendant had

stipulated and the parties had agreed to.

        As noted in the accompanying affirmation, plaintiff and defendant counsel

stipulated that plaintiff could file her complaint during the week of May 6th and

defendant counsel  would have an extra 45 days or 65 days to respond, or to on or about

July 9th, 2008.  This agreement is binding on the parties and should be sufficient to take

this case out of the requirements for an affidavit of merit and reasonable excuse for

                                                                                1

extension of time motions.  Under CPLR R2104 a written stipulation is sufficient and it need only by subscribed to by the party to be charged or its attorney, in this case the Defendant who made the demand for service of a complaint. *Wells v Wells*, 49 A.D. 2d 771, 372 N.Y.S.2d 735 (2nd Dept. 1975).

Also, Defendant has never returned the complaint that was served on its attorney on May 12, 2008, and has never opposed the motion to extend time.    The doctrines of promissory estoppel and waiver also prohibit the defendant from asserting prejudice for this period or otherwise opposing the filing and service of the complaint in this action. Plaintiff counsel relied on the agreement with Defendant, but also filed the prior motion in an excess of caution, because at the time of filing the motion he had not yet received a written confirmation of the extension of time granted by the Defendant counsel, although the agreement was mentioned in the original affirmation in support of extension of time. See *Wells* supra; *Myers v Slutsky*, 139 A.D.2d 709, 527 N.Y.S.2d 464 (2nd Dept. 1988); *Kimmel v State*, 172 Misc.2d 906, 66 N.Y.S.2d 265 (Sup. Ct. 1997).

B. The claim of the Plaintiff has merit as shown by the verified complaint signed by the plaintiff presented herewith and by the other evidence of merit presented in the prior motion for leave to extend time.

Other courts recently have found such conduct as the defendant airline has admittedly engaged in, by holding passengers in aircraft for lengthy periods of time on the ground and without adequate necessaries of food, water and rest room facilities, to be actionable on grounds of false imprisonment, negligence, breach of contract.  See Ray v

American Airlines, Inc., US DC WD ARK. Case No. 08-5025 6/2/08 amended 8/22/08, CCH Aviation Law Reporter US-DIST-CT, AVI 32 AVI 16,405 (copy of decision affixed hereto as appendix).

The Second Department has recently found that dismissal under CPLR 3012(b) under similar circumstances as here is unwarranted. See Raciti v Sands Point Nursing Home, ___ AD3d ___ (2nd Dept., 2008) 093008 NYAPP2, 2008-07225 decided September 30, 2008 [reversing trial court dismissal under CPLR 3012(b) for failure to serve a timely complaint where plaintiff submitted reasonable excuse for default (excusable law office failure), no prejudice to other side, prompt action to cure and establishment of a meritorious claim]; Amodeo v Gellert & Quartararo, PC, 26 A.D.3d 705, 810 N.Y.S.2d 246 (3rd Dept. 2006);

While the court found in its order that newspaper articles were not sufficient to demonstrate the merit of Plaintiff's claims, they do constitute evidence that a court can consider, especially at this initial stage of a case.

Here Defendant CEO's public admission that the defendant airline erred in holding passengers on aircraft for an excessive period of time on February 14, 2007 is an admission against interest that the court may consider as evidence under the well established exception to the hearsay rule. See accompanying affirmation at par. 3d and Exhibit D thereto; Vaden v Rose, 4 AD3d 468 (2d Dept. 2004); Giandana v Providence Rest Nursing Home, 32 AD3d 126, 135 (1st Dept. 2006).

Furthermore, the court can and should take judicial notice of the newspaper articles which make the incident in this case as those attached as Exhibit C to plaintiff counsel's affirmation in support of extending time to file a complaint, and as Exhibit D

to the accompanying affirmation, as this incident was a matter of common knowledge within the court's jurisdiction and also a notorious one that can easily be verified by sources not subject to question. See <u>EEOC v Trans States Airline Inc.</u>, 356 F.Supp.2d 984, 988 [ disruption of air service after 9/11 terrorist attacks]; <u>Schmude v Sheahan</u>, 312 F.Supp.1047, 1064 (ND Ill. 2004) ["it is routine for courts to take judicial notice of newspaper articles"]; <u>Ritter v Hughes Aircraft Co.</u>, 58 F.3d 454, 458 (9th Cir. 1995) [widespread layoffs by defendant]; <u>Kelly v Hitzig</u>, 71 Misc.2d 329, 336 NYS2d 122 (DC Nassau Co. 1972) [baggage handling by airline].

    <u>C. There were reasonable excuses for the short delay in serving a complaint which did not prejudice the defendant who agreed to extend the time during which the complaint was served.   Accordingly, the motion to extend should be granted upon reconsideration by the court.</u>

    The utter lack of prejudice to the Defendant, the reasonable excuses presented, the brevity of the delay of less than two weeks, and the clear lack of any intent to abandon the action by Plaintiff are all factors that weigh heavily in favor of the court exercising its discretion to permit the late service filing of the complaint.  The statutes CPLR 2001-2004 also specifically contemplate that law office failure is an excuse that may be properly considered by the court.

**II. The new facts presented with the motion to renew satisfies the requirements of CPLR 2221(e) as there are  reasonable justifications and excuses why they were not presented with the original motion.**

*[handwritten annotations at top: "real date was amended not filed", "a reasonable", "it wasn't a question of undeniable her delay", "Indges scores Ts delay"]*

The new evidence consisting of the ticket of the plaintiff, plaintiff's verification of the complaint, additional newspaper articles, were not known or if known were not reasonably available to the undersigned until after the motion for leave to extend time was prepared and served. As noted in the accompanying affirmation the travel and work schedules the plaintiff and her attorney and because they are located over 1200 miles apart and the plaintiff was out of the country for significant period of time caused the delays.

*[handwritten right margin: "but were known to Tt + it is her motion"]*

*[handwritten right margin: "no excuse"]*

The new evidence with the letter of June 21st, 2008 to the court with the attached email agreement of the plaintiff to extend time to serve a complaint was submitted to the court but was not read or included in the motion papers read by the court, apparently due to a local policy and/or rule that Motion Support office and the court do not to consider any supplementary papers to a motion unless presented at the calendar call.  And since the prior motion was submitted on consent, no appearance was required to be made at calendar call on the submission date.

The undersigned assumed, being use to practice in courts in the Third Department and not having practiced in Queens County before, that all papers filed or submitted would be considered by the court unless he received them back as rejected, and he only learned in September after the motion was denied by reviewing the document at the court clerk's office and receiving a return slip that some papers mailed to the court for filing in May and June were not read by the judge and were never docketed.

Accordingly there exists a reasonable excuse why certain evidence did not get to the court in the original motion, as it was either unknown to the plaintiff's counsel at the

time the original motion, or if known was not available, and when available after the

motion was filed did not get to the judge due to an anomaly in how court motion papers

are handled for submitted motions, and even though multiple copies of some

subsequently obtained evidence was mailed to the clerk, chambers and the court clerk and

served on the defendant counsel.  Accordingly, there exists reasonable justification or

excuse why the new evidence was not presented and such evidence together with the

evidence that was presented upon reconsideration should now be considered sufficient to

alter the prior order and allow the complaint to be filed. See *Simpson v Tommy Hillfiger*

*U.S.A., Inc.* 48 A.D.3d 389, 850 N.Y.S.2d 629 (2nd Dept. 2008)

Dated: October 21, 2008
Valatie, New York

*S/*
_____

Paul  S. Hudson, Esq.
Attorney for Plaintiff
4411 Bee Ridge Rd. #274
Sarasota, Florida 34233
(primary address for service of all papers)
(410) 940-8934  518-610-8288
pshudson@yahoo.com

12 Ressler Lane
Valatie, New York 12184

6

Transportation Law - Aviation Law Reporter - CURRENT AVIATION CASES - Volume 32 (2007-) -

## US-DIST-CT, AVI 32 AVI 16,405 Catherine RAY, on behalf of herself and all others similarly situated, Plaintiff, v. AMERICAN AIRLINES, INC., Defendant., (August 22, 2008)

Catherine RAY,▶ on behalf of herself and all others similarly situated, Plaintiff, v. AMERICAN AIRLINES, INC., Defendant.

U.S. District Court, Western District of Arkansas, Fayetteville Division. Case No. 08-5025 . June 2, 2008; Amended August 22, 2008.

**Air carriers –Liability –Passengers of ◀aircraft▶ –Delayed transportation –Jurisdiction of courts – Federal courts –Diversity of citizenship. –**

An **airline** passenger's state law claims against an air carrier arising from the diversion, extended ground stop, and delay of her flight were properly removed to federal district court. The passenger asserted that the court lacked jurisdiction to hear the action because carrier had failed to establish that the "amount in controversy" met the statutory minimums to support diversity jurisdiction for her individual and putative class action claims. However, the complaint contained sufficient allegations to support a potential recovery exceeding the court's jurisdictional minimum amount. Furthermore, the plaintiff's claimed putative class size and settlement demand was further proof that the amount in controversy met the court's jurisdictional requirement. Finally, a letter from the plaintiff's counsel offering to settle the case was properly before the court for the limited purpose of determining jurisdiction by establishing the amount in controversy. Because the carrier established that the amount in controversy was sufficient to establish the court's jurisdiction in either an individual case or a class action, the plaintiff's motion to remand was denied.

**◀Airline▶ Deregulation Act of 1978 –Federal preemption –Air carriers –Liability –Passengers of aircraft - -Delayed transportation. –**

The **Airline** Deregulation Act of 1978 did not preempt certain state law claims by an **airline** passenger against the carrier that arose from the weather-related diversion, extended ground stop, and delay of her flight. Although the ADA preempts state enactments related to **airline** rates, routes, or services, it does not immunize carriers from liability for injuries to passengers seeking compensation for past tortious conduct. Because allowing individuals to recover for such injuries does not create any state regulation of a carrier's business functions that likely would result in a direct substitution of the state's governmental commands for competitive market forces. As such, the passenger's claims involving compensation for lodging, meals, and ground transportation were preempted, but claims for false imprisonment, intentional infliction of emotional distress, negligence, and fraud – which are not controlled by specific federal regulations –were not subject to ADA preemption. However, the passenger's breach of contract claim was preempted to the extent that it was based upon a breach of the implied covenant of good faith and fair dealing because the ADA confines courts in contract actions to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

Back reference: ¶11563.

**Federal Aviation Act of 1958 –Federal preemption –Air carriers –Liability –Passengers of ◀aircraft▶ – Delayed transportation. –**

The Federal Aviation Act of 1958 did not field-preempt certain state law claims by a passenger against an air carrier arising from the weather-related diversion, extended ground stop, and delay of her flight. Congress' purpose in enacting the FAA was to promote safety in aviation and thereby protect the lives of persons who travel on board **aircraft**. The carrier argued that all of the claims were preempted because they would utilize state law to

APPENDIX

Case 1:09-cv-03553-ILG-MDG Document Filed 08/13/09 Page 54 of 122

impose standards on air carriers that would establish new legal requirements for passenger health and safety during long flight diversions and delays. Claims stemming from the carrier's decision to re-route the flight due to safety concerns and the Federal Aviation Administration's decision to shut down an airport were preempted by the FAA because they were directly related to safety issues currently subject to federal regulation. However, claims that were based upon the carrier's actions after the flight had been diverted were not preempted because there were no regulations in place that addressed the health and safety of **airline** passengers during lengthy ground delays.

**Back reference: ¶1420.**

## Air carriers –Liability –Passengers of ◀aircraft▶ –Delayed transportation --Tort claims. –

An **airline** passenger offered sufficient proof to support certain tort claims against an air carrier stemming from the weather-related diversion, extended ground stop, and delay of her flight. The plaintiff adequately supported a claim for false imprisonment because she alleged that the carrier had refused to permit most passengers to exit the flight even though terminal gates and buses were available to them, and that the carrier had misrepresented the reasons for confining the passengers on the **plane**. In addition, the plaintiff alleged sufficient facts to support a claim for intentional infliction of emotional distress or outrage because the flight's long ground delay could lead a jury to find that the carrier's actions had been so extreme and outrageous as to have been beyond all possible bounds of decency and utterly intolerable in a civilized community. Furthermore, the passenger sufficiently supported her negligence claim by alleging that the carrier had breached the duty owed its passengers to use its best efforts to bring passengers safely to their destinations, plan for weather-related disturbances in flight operations, and refrain from mistreating passengers. The passenger further alleged that the carrier's breach was the proximate cause of her injuries and losses.

## Air carriers –Liability –Passengers of ◀aircraft▶ –Delayed transportation –Breach of contract. –

A passenger's breach of contract complaint against an air carrier stemming from the weather-related diversion, extended ground stop, and delay of the passenger's flight was dismissed for failure to state a claim. The complaint alleged that the carrier had breached its customer service plan and conditions of carriage. However, the complaint failed to allege sufficient facts regarding the carrier's failure to comply with specific terms of the conditions of carriage. Accordingly, the complaint was dismissed.

## Air carriers –Liability –Passengers of ◀aircraft▶ –Delayed transportation --Fraud. –

An **airline** passenger failed to offer sufficient proof to support a fraud claim against an air carrier stemming from the weather-related diversion, extended ground stop, and delay of her flight. The claim failed because the passenger --who alleged that the carrier had falsely asserted that **aircraft** were not able to take off due to weather or congestion --did not identify who had made the statement, show how she intended to prove that the statement had been false when made, or show that she had relied on the carrier's representation. Accordingly, the claim was dismissed.

**AMENDED ORDER**

DAWSON, *District Judge*: This case concerns the frustrations surrounding an ◀airplane▶ trip described as a nightmare and the Plaintiffs efforts to obtain compensation for it. Plaintiff alleges that she was confined to an **aircraft** against her will and forced to endure poor conditions while it was on the ground for some eleven (11) hours. In response, Defendant contends that it has no responsibility because the Plaintiff's claims are preempted by the **Airline** Deregulation Act and the Federal Aviation Act.

Before the Court are the Plaintiff's Motion for Reconsideration of this Court's Order Granting Defendant Leave to File an Amended Notice of Removal (Doc. 31) and Brief in Support (Doc. 32), and Defendant's Response (Doc. 36), Defendant's Motion to Strike (Doc. 27) and Brief in Support (Doc. 28), and Plaintiff's Response (Doc. 34), Plaintiff's Motion to Remand (Doc. 14), and Brief in Support (Doc. 15), and Defendant's Response (Doc. 26), Defendant's Motion to Transfer Venue (Doc. 12), and Brief in Support (Doc. 13), and Plaintiff's Response (Doc. 24), and Defendant's Motion to Dismiss (Doc. 7), and Brief in Support (Doc. 8), Plaintiff's Response (Doc. 25) and Defendant's Reply (Doc. 33).

On December 27, 2007, Plaintiff initiated a class action suit against the Defendant in Washington County, Arkansas Circuit Court alleging false imprisonment, outrage or intentional infliction of emotional distress, negligence, breach of contract, and fraud or deceit, all surrounding a prolonged ◀airline▶ trip. As of this date, no effort has been made to certify this matter as a class action. On January 31, 2008, Defendant removed the action pursuant to both the Class Action Fairness Act of 2005, U.S.C. §1332(d), and this Court's diversity jurisdiction, 28 U.S.C. §§1332(a) and 1367(a). On February 7, 2008, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint (Doc. 1) for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and 9 (b). On February 26, 2008, Defendant filed a motion to transfer venue pursuant to 28 U.S.C. §1404(a), to the United States District Court for the Northern District of Texas. On February 28, 2008, Plaintiff filed a motion to remand this action to the Washington County, Arkansas Circuit Court. On March 17, 2008, Defendant filed a motion for leave to file an amended notice of removal, which was granted on March 19, 2008. On March 28, 2008, Defendant filed a motion to strike certain portions of the Affidavit of **Catherine Ray** and Declaration of Paul S. Hudson filed by the Plaintiff in support of her motion to remand. On April 7, 2008, Plaintiff filed a motion for reconsideration of this Court's order granting Defendant's motion for leave to file an amended notice of removal. For the reasons reflected herein, Plaintiff's Motion for Reconsideration is **DENIED**; Defendant's Motion to Strike is **DENIED**; Plaintiff's Motion to Remand is **DENIED**; Defendant's Motion to Transfer Venue is **DENIED**; and Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**A. Background**

Plaintiff, ◀**Catherine Ray,**▶ brings this action based on the experiences on a December 29, 2007 **American Airlines** flight from Oakland to Dallas-Fort Worth airport ("DFW airport"), which was diverted to Austin, Texas ("Austin") because of weather conditions at DFW airport. Plaintiff alleges that she was confined to the **aircraft** against her will and forced to endure deplorable conditions on the ground in Austin for approximately eleven (11) hours by the Defendant.

Plaintiff seeks compensatory and punitive damages for false imprisonment, outrage or intentional infliction of emotional distress, negligence, breach of contract, fraud or deceit. Plaintiff contends that Defendant's actions or failures to act serve as the basis for her claim, including Defendant's failure to cancel or delay flights due to bad weather; Defendant's refusal to permit passengers to leave the ◀airplane▶ while it was on the runway in Austin; Defendant's failure to "supply the **aircraft** with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures" while stranded on the runway in Austin; Defendant's failure to unload checked baggage when it finally allowed the passengers off the **airplane** in Austin at 9:30 p.m.; Defendant's refusal to provide overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding; and Defendant's refusal to allow some passengers to board their connecting flights in Dallas upon arrival the following morning.

Plaintiff alleges that the delays resulted from Defendant's "intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions." (Complaint ¶28). Further, Plaintiff alleges that Defendant's decision to keep the passengers on the ◄plane► during the delays was to "avoid expenses and lawful obligations to passengers associated with strandings, diversions, and canceled flights and for [Defendant's] and its officers, employees, agents and stockholders own pecuniary gain at the expense of Plaintiff and other passengers." (Complaint ¶29).

Defendant moves this Court to dismiss the Plaintiff's claims for failure to state a claim upon which relief can be granted. Defendant contends that the Plaintiff's state law claims are preempted by the ◄Airline► Deregulation Act and the Federal Aviation Act, and that her complaint fails to state a claim under the applicable state law. (Doc. 7 ¶1).

## B. Standard of Review

In determining whether a motion to dismiss should be granted, the court must test the legal sufficiency of a complaint. A motion to dismiss should only be granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. *Schaller Tel. Co. V. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir. 2002). In considering a motion to dismiss, the Court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 405 (8th Cir. 1999).

When a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the allegations of fact, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326-327 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In order to streamline litigation and dispense with needless discovery and factfinding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable. *Neitzke,* 490 U.S. at 326-27 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable... . [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

## C. Discussion

### I. Motions to Reconsider, Remand, and Strike

On January 31, 2008, Defendant removed this matter from Washington County, Arkansas Circuit Court pursuant to both the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) and diversity of citizenship and supplemental jurisdiction, 28 U.S.C. §§1332(a), and 1367(a). Thereafter, Defendant filed a motion to transfer venue, and Plaintiff filed a motion to remand. On March 19, 2008, this Court allowed the Defendant to amend its notice of removal. Plaintiff subsequently filed a motion asking the Court to reconsider its order allowing the Defendant to amend its notice of removal.

An action filed in state court may be removed by the defendant to federal district court if the district court could have exercised original jurisdiction over the matter. 28 U.S.C. §1441(a). Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332(a). Additionally, federal district courts have original jurisdiction of any civil action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action between citizens of different states. 28 U.S.C. §1332(d). The claims of the individual class members of a class action shall be aggregated to determine whether the matter in

controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §1332(d)(2)(6).

A case must be remanded back to state court if at any time before judgment it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. §1447(c). The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." Kopp v. Kopp, 280 F.3d 883, 886 (8th Cir. 2002). A defendant who seeks to remove a case to federal court bears the burden of proving that the requirements for diversity jurisdiction have been met. Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 814-15 (8th Cir. 1969). Where, as here, the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. See Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000) ("[T]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."). When a suit is commenced in state court there is a strong presumption that the plaintiff has not claimed an amount sufficient to establish federal jurisdiction. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938).

Plaintiff contends that this case should be remanded to state court because Defendant had not established that the amount in controversy is $75,000, as required to support diversity jurisdiction for her individual claim, and that it is unknown at this time whether the amount in controversy for the entire class will exceed $5,000,000. Plaintiff also contends that the Court should not have allowed the Defendant to amend its notice of removal with a settlement letter. Plaintiff argues that the Court failed to allow her adequate time to respond to the Defendant's motion, pursuant to the Court's local rule 7.2(b). The Court will consider the Plaintiff's motion for reconsideration as her response to the Defendant's motion to amend its notice of removal.

In her motion for reconsideration, the Plaintiff contends that a settlement letter can not be used to establish the amount in controversy because settlement communications are privileged and the federal rules of evidence prohibit such use. Additionally, Plaintiff argues that she offered to settle for less than the amount required for diversity jurisdiction and that she does not demand more than that amount in her Complaint, and therefore, the Defendant has failed to prove the requisite amount in controversy. The settlement letter, which was sent to Defendant by Plaintiff's counsel, demands that Defendant pay Plaintiff $50,000 for her individual claim, and $5,000,000 for the class action claim, as well as $74,900 for Katherine Hanni, another passenger who has filed an identical claim in district court in California ("Hanni case"), and $5,000,000 for the class action claim in the Hanni case.

Plaintiff contends that settlement communications are privileged and that Rule 408 and Rule 403 of the Federal Rules of Evidence prohibit the use of settlement letters to establish the amount of a claim. Rule 408 states that a settlement offer is not admissible "to prove liability for or invalidity of a claim or its amount." Several courts have concluded that Rule 408 does not prevent them from considering a settlement demand for purposes of assessing the amount in controversy. See Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002); Rising-Moore v. Red Roof Inns, Inc., 435 F.3d 813, 816-17 (7th Cir. 2006); and Vermande v. Hyundai Motor America, Inc., 352 F.Supp. 2d 195, 199 (D.Conn. 2004). We agree that Rule 408 does not prohibit the use of a settlement letter to establish the amount in controversy.

Plaintiff requests the court use its discretion under Rule 403 to prohibit the settlement letter as it is prejudicial evidence. Defendant contends that this argument has no merit because the letter is before the Court for the limited purpose of determining jurisdiction and not evidence. The Court agrees. The Plaintiff next argues that the settlement letter is privileged, and should not have been made public. The Court finds that the settlement letter may be privileged, but it can be used for the limited purpose of determining the amount in controversy. Accordingly, the Court has reconsidered its order of March 19, 2008, and concludes again that the Defendant may file an amended notice of removal.

The Court now considers the Plaintiff's motion for remand. Plaintiff contends that her individual claim is less than the $75,000 necessary to establish diversity jurisdiction, and that it is unknown whether the class action claim will exceed $5,000,000, as required by the Class Action Fairness Act of 2005. Defendant alleges that the

Plaintiff seeks damages in excess of the jurisdictional requirements, and asks the Court to consider the settlement offer sent by Plaintiff's counsel on March 3, 2008, as proof of such, as well as an affidavit filed by an experienced Fayetteville lawyer, who states in his professional opinion, that Plaintiff will incur up to $47,500 in prosecuting her alleged breach of contracts claims. The settlement letter proposes a tiered settlement for class members which would pay $10,000 for each passenger confined for 7 hours or more, and $2,000 for each passenger confined between 2 and 4 hours, and attorney fees of $250,000 or 10% of the total amount paid to plaintiffs.

Defendant contends that the settlement letter, included with its amended notice of removal, as well as the Plaintiff's demand for punitive damages and attorneys fees, is proof that the amount in controversy in this matter exceeds $75,000 and $5,000,000 for the respective claims. Plaintiff attempts to avoid diversity jurisdiction in this matter by stating in a post-complaint affidavit that she is "not seeking individual damages in this lawsuit in excess of $74,999 including attorney fees and punitive damages." (Doc. 14-2 ¶5). However, it has long been recognized that, for purposes of establishing diversity jurisdiction, tortious injuries may be quantified as tantamount to damages amounts. The Court finds sufficient allegations in the Plaintiff's complaint to support a potential recovery exceeding $75,000 in this case.

Although Plaintiff initially claimed that the putative class included 12,000 passengers, her counsel now states that he believes that number to be excessive. Defendant argues that if one applies only the least costly tier of the proposed settlement, *i.e.*, the $2,000 tier, to half of the 12,000 passengers the Complaint alleges were in the putative class, the amount in controversy is $12,000,000. Defendant contends that the Plaintiff's settlement demand for $5,000,000 for each of the two class action claims filed is proof that the amount in controversy exceeds $5,000,000. Plaintiff concedes that she does not have sufficient information at this stage in the proceeding to determine whether the amount in controversy exceeds $5,000,000 for the class action claim.

Defendant argues that the $5,000,000 settlement demand is not the amount in controversy, but rather the amount it would take to settle the case. In support, the Defendant refers to the settlement letter which provides: "settlement ... would relieve [Defendant] of the risk of a much larger jury award ...". Defendant claims that statements made in the settlement letter demonstrate that the amount in controversy exceeds $75,000 and $5,000,000. Although the Eighth Circuit Court of Appeals stopped short of determining whether a post-complaint settlement offer alone was sufficient to establish the requisite amount in controversy, the Court did conclude that a letter was "further support for the valuation of the claims." *In re Minnesota Mut. Life Ins. Co. Sales Practice Litigation*, 346 F.3d 830, 834-35 (8th Cir. 2003). Accordingly, we find that a settlement letter can be considered for the limited purpose of determining the amount in controversy for jurisdictional purposes.

Defendant contends that although Plaintiff does not allege a specific amount in controversy for the putative class she seeks to represent, one can ascertain an amount in controversy from Plaintiff's allegations in the Complaint and Affidavit filed in support of the motion to remand. Specifically, Defendant refers to Plaintiff's allegation that "each of the plaintiffs [meaning the putative class members] suffered individual damages sufficient to satisfy the jurisdictional requirements of the circuit court in Arkansas but insufficient to satisfy the jurisdictional requirements in federal diversity cases." {Complain ¶68}. Defendant contends that this allegation is proof that Plaintiff intends to place up to $74,999 in controversy for each plaintiff, and considering that the putative class could be as large as 12,000 plaintiffs, the amount in controversy for the putative class could be much higher than the $5,000,000 needed for federal jurisdiction. The Court finds that the Defendant has established that the amount in controversy is sufficient to establish jurisdiction in this Court in either an individual case or a class action.

The Court denies Defendant's motion to strike portions of the declarations of ◄Catherine Ray► and Paul Hudson. The Court did not rely on any improper or inadmissible evidence in deciding these motions.

## II. Motion to Transfer Venue

On February 26, 2008, Defendant filed a motion asking the Court to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §1404(a). Section 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a) (1994). The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The Eighth Circuit has recognized that motions for transfer under 1404(a) "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* at 691. Defendants bear the burden of proving the alternate forum is more convenient than the one chosen by the plaintiffs. *Arkansas Right To Life State Political Action Committee v. Butler*, 972 F.Supp. 1187, 1193 (W.D.Ark. 1997). In doing so, defendants must overcome the general principle that the plaintiffs' choice of forum should be disturbed only if the balance of convenience strongly favors the defendant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, (1947).

Defendant contends that every section 1404(a) factor supports the transfer to the Northern District of Texas, except plaintiff's choice of forum, which it argues should be given little deference because this matter is a nationwide class action. Defendant argues that when a class of plaintiff volunteers to represent a class of plaintiffs who do not reside in the plaintiff's chosen forum, that plaintiff's choice of forum is given lesser weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); and *Jenkins v. H & R Block, Inc.*, No. 4:06-CV-00365-GTE, 2006 U.S. Dist. LEXIS 35112 (E.D. Ark. May 17, 2006). Defendant contends that Plaintiff's choice of venue should be given little weight because very few of the passengers on her flight reside in Arkansas, and there is no connection between this forum and the events of which she complains.

Defendant contends that Texas would be a more convenient forum for this matter because all of Plaintiff's claims arose in Texas, numerous witnesses reside in Texas, most of Defendant's documentary evidence is in Texas, and Texas law will govern Plaintiff's claims. Plaintiff responds that Arkansas is the more convenient forum, and argues that she entered into a contract with the Defendant in Arkansas, Defendant does business in Arkansas, the district court in Arkansas can apply Texas law, and the factors of section 1404 and plaintiff's choice of forum outweigh transfer to Texas. Plaintiff argues that a transfer to Texas is not more convenient for the parties as a whole, and would serve only to shift the inconvenience from the Defendant to the Plaintiff. She contends that this matter will require witnesses, from all over the United States, to travel, and that it will be easier and less expensive for them to travel to Fayetteville, Arkansas. Additionally, she argues that although the claim may have arose in Texas, most of the events did not occur there.

Plaintiff concedes that venue in Texas would be more convenient for the Defendant, since its headquarter is located there, but contends that the Court should not shift the convenience from the Plaintiff to the Defendant. Plaintiff claims that accessability of records is not a factor this Court should give much weight because modern communications, overnight delivery, and computers have made the transfer of records less difficult. Further, Plaintiff contends that Arkansas choice of law rules will apply even if the matter is transferred to Texas, so there is nothing to gain by transferring the matter. Plaintiffs' choice of forum is given "great weight" and should rarely be disturbed. *Houk v. Kimberly-Clark Corp.*, 613 F.Supp. 923, 927 (W.D.Mo. 1985); *Arkansas-Best Freight System, Inc. v. Youngblood*, 359 F.Supp. 1125, 1129 (W.D.Ark. 1973). This is especially true where the plaintiff is a resident of the district in which suit was brought. *Houk*, 613 F.Supp. at 927. In the case at bar, Plaintiff chose to file in this district and she is a resident of this district. In view of the fact that venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated. *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27 (8th Cir. 1973).

After considering all the relevant factors, the Court finds that the Defendant has not met its burden of proof to justify a transfer of venue away from the Plaintiff's choice of forum and resident district. The Defendant has failed to demonstrate that this matter would be any more convenient for the parties and witnesses in the Northern District of Texas than in this district. Rather, it appears that a transfer of venue to Texas would only serve to shift certain conveniences to the Defendant. The parties and a majority of the witnesses will be required to travel regardless of whether the venue is in Dallas, Texas or Fayetteville, Arkansas. Although this matter may later be certified as a class action, the Court does not find that fact justifies a transfer to another district. The proposed class members reside in states across the country and will be required to travel to either venue. Additionally, the

Court does not find the inaccessibility of records, or application of another state's substantive law require that this matter be transferred to another district. In considering the interests of justice, this Court finds that Plaintiff's choice of forum is entitled to great weight, and that factors of judicial economy and mitigation of party expenses require that this matter not be transferred. Accordingly, the Defendant's motion to transfer venue is denied.

## III. Motion to Dismiss

Defendant contends that Plaintiff's claims should be dismissed because they are preempted by the ◄Airline► Deregulation Act ("ADA"), 47 U.S.C. §41413(b)(1), and the Federal Aviation Act ("FAA"), and for failure to state a claim upon which relief can be granted.

### A. Preemption

A fundamental principle of the Constitution is that Congress has the power to preempt state law. *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000). Pursuant to the Supremacy Clause, state law that conflicts with federal law has no effect. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992). The Supreme Court has held that federal preemption of state law can be either expressed or implied. *Shaw v. Delta ◄Airlines, ► Inc.,* 463 U.S. 85, 95 (1983). It is well established that within Constitutional limits Congress may preempt state authority by so stating in express terms. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.,* 461 U.S. 190, 203 (1983). In the absence of an express congressional command, state law can be preempted impliedly. *Cipollone,* 505 U.S. at 516. There are two types of implied preemption, field preemption and conflict preemption. *Crosby,* 530 U.S. at 372.

There are three situations in which Courts will find a state law field-preempted. First, where "Congress' intent to supercede state law altogether may be found from a scheme of federal regulation so persuasive as to make reasonable the inference that Congress left no room to supplement it." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.,* 461 U.S. 190, 204 (1983). Second, where "the Act of Congress " touch [es] a field in which the federal interest is so dominant that the federal system [can] be assumed to preclude enforcement of state laws on the same subject." *Id.* Lastly, where "the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal the same purpose." *Id.* Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

In determining whether a state action is preempted by federal law, a Court must first look at Congress' intent. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 209 (1985). The purpose of Congress is the ultimate touchstone. *Id.* To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute. *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 101 (1992).

### 1. ◄Airline► Deregulation Act of 1978

Defendant contends that Plaintiff's causes of action are expressly preempted by the ◄Airline► Deregulation Act of 1978, which prohibits states from enacting or enforcing a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[1]. 49 U.S.C. §41713(b)(1). The Supreme Court has interpreted the phrase "related to" as preempting all state laws having a connection with or reference to **airline** rates, routes, or services. *Morales v. Trans World Airlines,* Inc., 504 U.S. 374, 378-79 (1992). However, neither the Supreme Court nor the Eighth Circuit have interpreted the term "services" in the context of the ADA. In Botz v. Omni Air International, 286 F.3d 488, 495 (8th Cir. 2002), the Eighth Circuit noted that the circuits were

split regarding the definition of "service", but did not settle on a definition. Botz, a flight attendant, was terminated for refusing a flight assignment she believed violated federal safety regulations. Id. at 490. The Eighth Circuit held that Botz's claims under the Minnesota Whistle Blower statute were preempted by the ADA because the enforcement of the statute would authorize a flight attendant to refuse assignments and protect her when she does. Id. at 495. The Court held that such protections "have a forbidden connection with an air carrier's service under any reasonable interpretation of Congress' use of the word `service.'" Id., citing Charas v. Trans World Airlines, 160 F.3d 1259, 1265-66 (9th Cir. 1998). Although the Court did not define the term "service", it did note that "it is apparent from the preemption provision's plain language that it has a broad preemptive effect on state law claims involving air-carrier prices, routes, or services." Botz, 286 F.3d at 494.

The Third and Ninth Circuits have interpreted "service" as "the prices, schedules, origins, and destinations of the point-to-point transportation of passengers, cargo, or mail," but not the "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." Charas, 160 F.3d at 1261; and Taj Mahal Travel, Inc. v. Delta ◄Airlines,► Inc., 164 F.3d 186, 194 (3rd Cir. 1998). The Fourth, Fifth, Seventh, and Eleventh Circuits have interpreted "service" more broadly to include boarding procedures. See Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1257-59 (11th Cir. 2003) (stating that "services" includes "the physical transportation of passengers ... and the incidents of that transportation over which air carriers compete"); Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998) ("Undoubtedly, boarding procedures are a service rendered by an airline."); Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (defining service as contractual features of air transportation, including "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself"); Travel All Over The World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996) (adopting definition set forth in Hodges).

In Rowe v. New Hampshire Motor Transport Association, 128 S.Ct 989, (2008), the Supreme Court interpreted the scope of a preemption provision related to the deregulation of trucking, which was modeled after the ADA's preemption provision. The Court held that federal law preempts a state law that "forbids licensed tobacco retailers to employ a `delivery service' unless that service follows particular delivery procedures." Id. at 995. The state regulation required tobacco retailers to utilize a delivery service which provides a special recipient-verification service to ensure that tobacco is not getting into the hands of minors. Id. at 993-94. The Court in Rowe held that the state statute was preempted because it would require carriers "to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." Id. at 996. The Supreme Court's holding in Rowe appears to interpret the term "service" to extend beyond prices, schedules, origins, and destinations.

However, this case and Charas are distinguishable from Rowe in that they both involve injured passengers seeking compensation for past tortious conduct, while Rowe involved a challenge to a state statute which created an affirmative requirement on the part of the carrier. An affirmative regulation which restricts a carrier's business functions would likely result in a "direct substitution of [the state's] governmental commands for competitive market forces." Rowe, 128 S.Ct. at 995. However, allowing an individual to recover for injuries tortiously caused by a carrier does not create any such regulation.

Defendant contends that Plaintiff's state law causes of action for false imprisonment, intentional infliction of emotional distress, negligence, breach of contract, and fraud are preempted by the ADA. Plaintiff responds that Congress did not intend to prohibit the use of state tort law to provide remedies to passengers faced with situations similar to those Plaintiff faced as Defendant's passenger. In Morales, the Supreme Court described Congress' goal in enacting the ADA as an effort to promote "maximum reliance on competitive market forces" that would further "efficiency, innovation, and low prices" as well as "variety [and] quality ... of ◄air transportation► services." 504 U.S., at 378. In support of its limited definition of "service", the Ninth Circuit concluded in Charas,

"when Congress enacted federal economic deregulation of the ◄airlines,► it intended to insulate the industry from possible state economic regulation as well. It intended to encourage the forces of competition. It did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct."

160 F.3d at 1266. The Ninth Circuit reasoned that "[t]o interpret 'service' more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an ◄airline► does. It seems clear to us that this is not what Congress intended." Id. We agree with the reasoning of the Ninth Circuit and we do not believe that Congress intended to preempt all state claims for tortious acts of air carriers.[2]

Accordingly, we find that Plaintiff's claims, which are not controlled by specific regulations, are not preempted by the ADA. Plaintiff's claims involving compensation for lodging, meals, ground transportation and other expenses are preempted. The Department of Transportation has implemented regulations which require air carriers to compensate passengers when flights are overbooked, but it has not extended such protection for weather related cancellations. Finally, Plaintiff's breach of contract claims which allege a breach of the implied covenant of good faith and fair dealing based on Defendant's Customer Service Plan and Conditions of Carriage are preempted except to the extent that such claims or expenses are covered by specific terms of the Conditions of Carriage. The Supreme Court has held that the ADA "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." ◄American Airlines,► Inc., v. Wolens, 513 U.S. 219, 233 (1995).

### 2. Federal Aviation Act of 1958

Defendant next contends that Plaintiff's claims are field-preempted by the Federal Aviation Act of 1958, codified at 49 U.S.C. §§40101, and its implementation of Federal Aviation Regulations ("FARs"), which preempt the field of passenger health and safety on commercial ◄aircraft.► The FAA was enacted in response to "a series of fatal air crashes between civil and military aircraft operating under separate flight rules." United States v. Christensen, 419 F.2d 1401, 1404 (9th Cir. 1969). Congress's purpose in enacting the FAA was "to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft." In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 406 (9th Cir. 1983). Defendant contends that Plaintiff is trying "to utilize state law to impose standards on air carriers that would establish new legal requirements for health and safety services for passengers during lengthy diversions and delays of flights." (Doc. 8 at 24). Plaintiff's claims which are based on Defendant's decision to re-route her flight due to safety concerns and the Federal Aviation Administration's decision to shut down the DFW airport for bad weather are preempted by the FAA. The Court finds that these decisions are directly related to safety issues currently regulated by the FAA. However, the Court concludes Plaintiff's claims which are based on Defendant's actions after the flight was diverted and on the ground in Austin are not preempted. The Defendant alleges that the Department of Transportation is currently considering whether additional regulation is necessary in this field. While the Court applauds the Department of Transportation's concern, we find that there are currently no regulations in place which address the health and safety of air carrier passengers during lengthy delays on the ground, and the Plaintiff's claims based on such are not preempted.

### B. Failure to State a Claim

Alternatively, Defendant contends that Plaintiff's claims should be dismissed for failure to state a claim. A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a). Dismissal under Rule 12(b)(6) is only appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Plaintiff plead her claims under Arkansas law. However, Defendant argues that Texas law should apply to Plaintiff's claims. For purposes of this motion, the Court will consider both State's laws.

### 1. False Imprisonment

Pursuant to either Arkansas or Texas law, false imprisonment consists of the "intentional confinement of a person, without consent or lawful privilege." See Dick v. State, 364 Ark. 133, 141 (Ark. 2005); and Wal-Mart Stores, Inc. v. Rodriquez, 92 S.W.2d 502, 506 (Tex. 2002). Defendant contends that Plaintiff has failed to allege facts from which it could be determined that (1) she validly withdrew her consent to remain on the ◄aircraft,► (2) a duty arose on Defendant's part to release her, or (3) that Defendant lacked federal legal authority over its

aircraft and those on board until the flight crew opened the passenger door of the aircraft, released the fasten safety belt warnings, and notified passengers that it was safe to deplane. Plaintiff alleges that "with the exception of a few passengers whose destination was Austin," Defendant "refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available" to them. (Complaint ¶19). Further, Plaintiff alleges that Defendant misrepresented the reasons for confining the passengers on the plane. (Complaint ¶27). Considering all allegations in the complaint as true and viewing the facts most favorably to the Plaintiff, the Court finds that the Plaintiff has offered sufficient proof at this stage in the proceeding to support a claim for false imprisonment. Accordingly, the Defendant's motion to dismiss the false imprisonment claim is denied.

## 2. Intentional Infliction of Emotional Distress/Outrage

Pursuant to either Texas or Arkansas law, to prove a claim for intentional infliction of emotional distress or outrage, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. See Key v. Coryell, 86 Ark.App. 334, 336 (Ark.App. 2004); and Hoffman-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004). The conduct must be so extreme as to be "beyond all possible bounds of decency, and utterly intolerable in a civilized community," Id., and the distress so severe "that no reasonable person could be expected to endure it." Id. The Court finds that Plaintiff has alleged facts sufficient to support a claim for intentional infliction of emotional distress or outrage at this stage in the proceeding. Although Plaintiff alleges that Defendant initially re-routed her flight in response to inclement weather, and that many other flights were similarly disrupted, she argues that the long delay on the ground could have been avoided. Under these circumstances, a jury could find that the Defendant's actions are so extreme and outrageous as to be "beyond all possible bounds of decency, and utterly intolerable in a civilized community." Accordingly, Defendant's motion to dismiss the Plaintiff's intentional infliction of emotional distress or outrage claim is denied.

## 3. Negligence

Under Texas law, if a defendant's conduct violates a contractual duty, rather than a duty independently imposed by law, there is no negligence claim. See DeWitt County Elec. Cooperative, Inc. v. Parks, 1 S.W.3d 96, 105 (Tex. 1999) (a contract which "spells out the parties' respective rights," governs any dispute, not common-law negligence). Under Arkansas law, "if the facts warrant, a party to a contract may sue on an independent tort claim, but may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice. The breach itself is simply not a tort." Quinn Companies, Inc. v. Herring-Marathon Group, Inc., 299 Ark. 431, 432 (Ark. 1989). "Legitimate tort claims can arise out of contractual relationships in some situations; however, unless the conduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests, a breach of contract is generally not treated as a tort if it consists merely of a failure to act (nonfeasance)." Lehman Properties, Ltd. Partnership v. BB & B Const. Co., Inc., 81 Ark.App. 104, 110 (Ark.App. 2003). In Arkansas, the essential elements of a cause of action for negligence are that the plaintiff show a duty owed and a duty breached, and that the defendant's negligence was a proximate cause of the plaintiff's damages. See Wagner v. Gen. Motors Corp., 370 Ark. 268, 271 (Ark. 2007).

Defendant argues that Plaintiff's negligence claims are identical to her breach of contract claims, and that she fails to identify any duty owed to her by Defendant, independent of the duties set forth in Defendant's Conditions of Carriage. However, Arkansas courts have permitted tort claims based on contractual duties "when the misconduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests." Westark Specialities, Inc. v. Stouffer Family Ltd., Partnership, 310 Ark. 225, 233 (Ark. 1992). Plaintiff alleges that Defendant owed her and other passengers a duty of due care to use best efforts to bring passengers safely to their destinations, to plan for weather related disturbances in its flight operations, and to refrain from mistreatment of them with unjustified involuntary confinement, deprivation of passengers' baggage and stranding in remote locations. Plaintiff further alleges that Defendant breached those duties and that its negligence was the proximate cause of damage and losses to her. The Court finds that Plaintiff has plead allegations sufficient to support a negligence claim under Arkansas law, and that it was foreseeable that Defendant's conduct could have resulted in an unreasonable risk of harm to the plaintiff's interests. Accordingly, the Defendant's motion to dismiss the Plaintiff's

claim for negligence is denied.

## 4. Breach of Contract

Defendant contends that Plaintiff's breach of contract claim, based on Defendant's Customer Service Plan and Conditions of Carriage, should be dismissed because it fails as a matter of law. Defendant argues that Plaintiff's reliance on it's Customer Service Plan is misplaced because the plan expressly states that it "does not create contractual or legal rights." (Doc. 8-2 at 67). The Court agrees. Additionally, Defendant contends that the claim based on Defendant's Conditions of Carriage fails because all of the damages she alleges are expressly excluded by the document's terms. Defendant argues that it does not guarantee its schedule and expressly disclaims any liability for delays as a result of bad weather. Plaintiff responds that her complaint "provides sufficient notice of the alleged breaches," but agrees to "provide Defendant with a more definite statement setting forth further details [of] the breaches of contract [claim]." (Doc. 25 at 28). The Court finds that the Plaintiff's complaint fails to allege sufficient facts regarding Defendant's failure to comply with specific terms of the Conditions of Carriage, and therefore does not state a claim for breach of contract. Accordingly, the Defendant's motion to dismiss the Plaintiff's breach of contract claim is granted.

## 5. Fraud

Defendant contends that Plaintiff's fraud claim is not plead with sufficient particularity and should be dismissed. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This particularity requirement demands a higher degree of notice than that required for other claims. *U.S. ex rel. Costner v. U.S.*, 317 F.3d 883, 888 (8th Cir. 2003). 'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Costner*, 317 F.3d at 889.

Plaintiff contends that she has sufficiently plead allegations of fraud to support her claim. The complaint alleges that Defendant knowingly deceived Plaintiff with false statements and misrepresentations and concealment of material information in relation to the reasons for the confinement, diversions, and schedule changes, and that Defendant had a special relationship with the Plaintiff as it possessed all relevant information and power over the person and baggage of its passengers, that Defendant had a duty to disclose material information related to its delays and diversion, which it failed to do, and that Plaintiff relied to her detriment on the false and deceptive statement of Defendant, and suffered damages thereby. (Complaint ¶¶60-65).

Under either Texas or Arkansas law, to establish fraud, five elements must be proven: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *See Riley v. Hoisington*, 80 Ark.App. 346, 351 (Ark.App. 2003); and *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 359 (5th Cir. 1996). Additionally, Texas law requires that Plaintiff demonstrate that she relied on the representations to her detriment. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 493 (5th Cir. 1999).

As the basis for her claim, Plaintiff alleges that Defendant "falsely assert[ed] to passengers and the public that ◄aircraft were not able to take off due to weather or congestion" (Complaint ¶¶27 & 63). However, Plaintiff fails to identify who made this statement, how she intends to prove that the statement was false when it was made, or how she relied on the representation. The Court finds that Plaintiff has failed to sufficiently state a claim for fraud. Accordingly, the Defendant's motion to dismiss the Plaintiff's fraud claim is granted.

## C. Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration is **DENIED**; Defendant's Motion to Strike is **DENIED**; Plaintiff's Motion to Remand is **DENIED**; Defendant's Motion to Transfer Venue is **DENIED; and** Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. In her response to the motion to dismiss, Plaintiff states that she wishes to add additional claims to her Complaint. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), a plaintiff may amend his complaint once *as of right* at any time before he has been served with a "responsive pleading." Defendant has not filed an Answer to the Complaint, and its Motion to Dismiss is not a "responsive pleading" under Rule 15. *See Winfrey v. Brewer,* 570 F.2d 761, 764 (8th Cir. 1978) ("A motion to dismiss is not a `responsive pleading' for purposes of [Rule 15].") However, Plaintiff has already amended her Complaint once, and therefore, must seek leave of the Court to amend it again. The Court finds that justice requires that Plaintiff be given leave to file a Second Amended Complaint to remedy any defects in her pleading and include any additional claims.

IT IS SO ORDERED

[1] Initially, the ADA's preemption provision was codified at 49 U.S.C. App. §1305(a)(1) and read in pertinent part as follows: "[N]o State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier...."

[2] Defendant's position would appear to be the same if the Plaintiff was kept on the plane for eleven (11) days instead of eleven (11) hours.

NON: AVI01 32AVI-ALL16405 http://business.cch.com/network&JA=LK&fNoSplash=Y&&LKQ=GUID%3A241a4ef1-43d3-3d30-aa99-eec5197d4a0e&KT=L&fNoLFN=TRUE& AVI01 #16346 [AVI-ALL ]

© 2008, CCH INCORPORATED.   Find help at http://support.cch.com, call Research Specialists at 800-344-3734,  | Back to Top
All Rights Reserved.                                          or call Tech Support at 800-835-0105.
A WoltersKluwer Company

NEW YORK STATE SUPREME COURT
QUEENS COUNTY

INDEX NO. 3776-08
Assigned: Hon. Valerie Brathwaite-Nelson

_____

KATHARINE BISCONE, Individually and
On behalf of all others similarly situated,

                              Plaintiff,

      -against-

JETBLUE AIRWAYS CORPORATION, and
Does "1" through "20",

                              Defendant.

_____

AFFIRMATION OF SERVICE

Paul S. Hudson, an attorney admitted to practice in the courts of New York State does

affirm under penalty of perjury that on November 8, 2008, he mailed a copy of the within

Notice of Motion, Affirmation and Memorandum of Law to Holland & Knight, Christine

Tramantano, Attorneys for the Defendant, 195 Broadway, New York, New York 10007

by priority mail.


Dated:  November 8, 2008

Sarasota, Florida
                                         _S/_____
                                         Paul S. Hudson, Esq.
                                         Law Offices of Paul S. Hudson, PC
                                         4411 Bee Ridge Road #274
                                         Sarasota, Florida 34233
                                         (primary address for service of all papers)
                                         410-940-8934
                                         Globetrotter1947@hotmail.com


                                         12 Ressler Lane, Valatie, NY 12184
                                         518-610-8288
                                         pshudson@yahoo.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHERINE BISCONE, Individually and on behalf of
all others similarly situated,

                             Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION, et al.,

                           Defendants.

Index No. 3776/2008
IA Term, Part 7
Hon. Valerie Brathwaite Nelson

**NOTICE OF CROSS-MOTION**

      PLEASE TAKE NOTICE that, upon the Memorandum of Law, Affirmation of Christine Tramontano dated July 3, 2008, and the exhibits annexed thereto, Defendant Jet Blue Airways Corporation shall cross-move, pursuant to CPLR 3012(b), before the Honorable Valerie Brathwaite Nelson, J.S.C., Supreme Court of the State of New York, Queens County, at the Courthouse located at Queens County Supreme Court, 88-11 Sutphin Blvd., Jamaica, NY 11435, Room 42, on December 9, 2008 at 9:30 a.m. or as soon thereafter as counsel may be heard for entry of an Order granting the dismissal of Plaintiff's action in its entirety and costs incurred by Defendant JetBlue for bringing this Cross-Motion, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 1, 2008

                       HOLLAND & KNIGHT LLP

                       By: _____
                          Christopher G. Kelly
                          Christine Tramontano
                          195 Broadway
                          New York, New York  10007
                          (212) 513-3200
                          *Attorneys for Defendant Jet Blue Airways Corporation*

TO:    Paul Hudson, Esq.
        Law Offices of Paul S. Hudson PC
        *Attorney for Plaintiff*
        4411 Bee Ridge Road #274
        Sarasota, FL 34233
        (410) 940-8934
        (941) 349-1947

        Paul S. Hudson, Esq.
        12 Ressler Lane
        Valatie, NY 12184

# 5847712_v1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHERINE BISCONE, Individually and on behalf of
all others similarly situated,

                               Plaintiff,

           -against-

JETBLUE AIRWAYS CORPORATION, et al.,

                         Defendants.

Index No. 3776/2008
IAS Term, Part 7
Hon. Valerie Brathwaite Nelson

## JETBLUE'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO REARGUE/RENEW
## AND
## IN SUPPORT OF JETBLUE'S CROSS-MOTION TO DISMISS THE ACTION

HOLLAND & KNIGHT LLP

195 Broadway
New York, New York 10007-3189

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ...............................................................1

SUMMARY OF ARGUMENT ...........................................................3

ARGUMENT ...............................................................................4

POINT I .....................................................................................4

   PLAINTIFF'S MOTION FOR LEAVE TO REARGUE OR RENEW IS FUTILE
   BECAUSE THE EVIDENCE SHE NOW OFFERS WOULD NOT CHANGE THE
   OUTCOME OF PLAINTIFF'S ORIGINAL MOTION ...................................4

   A.   THIS COURT CORRECTLY APPLIED THE LAW AND DENIED PLAINTIFF'S ORIGINAL
   MOTION ...................................................................................4

   B.   THE EVIDENCE PLAINTIFF NOW OFFERS DOES NOT ENTITLE PLAINTIFF TO THE
   RELIEF SHE SOUGHT IN HER ORIGINAL MOTION .................................7

POINT II ....................................................................................8

   PLAINTIFF'S MOTION FOR LEAVE TO REARGUE IS WITHOUT MERIT
   BECAUSE SHE RELIES SOLELY ON FACTS THAT SHE DID NOT OFFER ON
   THE ORIGINAL MOTION ...............................................................8

POINT III ...................................................................................9

   PLAINTIFF'S MOTION TO FOR LEAVE TO RENEW IS WITHOUT MERIT
   BECAUSE IT BASED UPON FACTS THAT WERE KNOWN TO OR AVAILABLE
   TO PLAINTIFF AT THE TIME OF THE FILING OF HER ORIGINAL MOTION .........9

POINT IV ...................................................................................11

   PLAINTIFF'S MOTION FOR LEAVE TO REARGUE OR TO RENEW MUST BE
   DENIED BECAUSE IT IS UNTIMELY ..................................................11

JETBLUE'S CROSS-MOTION TO DISMISS.............................................12

CONCLUSION..............................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A & J Concrete Corp. v. Arker*,
    54 N.Y.2d 870, 444 N.Y.S.2d 905 (1981) ................................................................5, 6

*Amodeo v. Gellert and Quartararo, P.C.*,
    26 A.D.3d 705, 810 N.Y.S.2d 246 (3d Dep't 2006).................................................7

*Barasch v. Micucci*,
    49 N.Y.2d 594, 427 N.Y.S.2d 732 (1980) ............................................................7

*Block v. New York City Health and Hospitals Corp.*,
    78 A.D.2d 690, 432 N.Y.S.2d 521 (2d Dep't 1980).................................................7

*Caton v. Schenectady Gazette*,
    82 A.D.2d 949, 440 N.Y.S.2d 760 (3rd Dep't 1981) .............................................6

*Corrado v. Bendell*,
    93 A.D.2d 876, 461 N.Y.S.2d 426 (2d Dep't 1983)...............................................5

*Egan v. Federated Department Stores, Inc.*,
    108 A.D.2d 718, 484 N.Y.S.2d 883 (2d Dep't 1985)...............................................6

*Feldstein v. Rounick*,
    295 A.D.2d 400, 743 N.Y.S.2d 736 (2d Dep't 2002)...........................................9, 11

*Hassell v. New York University Medical Center*,
    48 A.D.3d 632, 852 N.Y.S.2d 342 (2d Dep't 2008)........................................8, 9, 11

*Jacobs v. Sabo*,
    17 A.D.3d 321, 791 N.Y.S.2d 835 (2d Dep't 2005)......................................9, 10, 11

*Jacondino v. Lovis*,
    186 A.D.2d 109, 587 N.Y.S.2d 696 (2d Dep't 1993)............................................12

*Laxrand Const. Corp. v. R.S.C.A. Realty Corp.*,
    135 A.D.2d 685, 522 N.Y.S.2d 584 (2d Dep't 1987)........................................8, 11

*Louros v. Parmiter*,
    288 A.D.2d 273, 732 N.Y.S.2d 888 (2d Dep't 2001)....................................9, 10, 11

*Marion v. Notre Dame Academy High School*,
    133 A.D.2d 614, 519 N.Y.S.2d 721 (2d Dep't 1987)................................................7

*McNeill v. Sandiford*,
    270 A.D.2d 467, 705 N.Y.S.2d 610 (2d Dep't 2000)..............................10, 11

*Shapiro v. State of New York*,
    259 A.D.2d 753, 687 N.Y.S.2d 401 (2d Dep't 1999)..............................10, 11

*Wunsch v. Cerwinski*,
    36 A.D.3d 612, 828 N.Y.S.2d 157 (2d Dep't 2007)................................9, 11


**STATUTES**

CPLR 2221(e)(2) ................................................................................................9

CPLR § 2221(d)(2) ........................................................................................8, 9

CPLR § 2221(d)(3) ............................................................................................11

CPLR § 3012(b)........................................................................................1, 2, 4

# 5825866_v2

## PRELIMINARY STATEMENT

Defendant JetBlue Airways Corporation ("JetBlue") respectfully submits this Memorandum of Law and the accompanying Affirmation of Christine Tramontano, Esq.[1] in opposition to the motion filed by Plaintiff Katherine Biscone ("Plaintiff") in which she seeks an order granting her leave to renew or to reargue her Motion dated May 6, 2008 (the "Original Motion"). In her Original Motion, the Plaintiff sought leave to serve a complaint beyond the time required by the CPLR. By Order dated September 12, 2008, and entered September 17, 2008 (the "Order"), this Court denied Plaintiff's Original Motion, finding that Plaintiff failed to establish the elements required for the relief she sought.

This Memorandum of Law and accompanying Affirmation are also submitted in support of JetBlue's Cross-Motion for an order pursuant to CPLR § 3012(b) to dismiss the action, as well as for costs incurred by JetBlue in bringing this Cross-Motion.

Plaintiff's self-styled motion for leave to reargue/renew is futile under legal standards applicable in the Second Department. For the reasons and arguments set forth below, the Court should deny Plaintiff's motion and grant JetBlue's Cross-Motion.

## STATEMENT OF FACTS

Plaintiff commenced this action on February 13, 2008 by filing with the Queens County Clerk a Summons with Notice and thereafter serving the Summons with Notice upon the Secretary of State. *See* Ex. 1 to Tramontano Aff. In response, JetBlue served by mail its Notice of Appearance and Demand for a Complaint. *See* Ex. 2 to Tramontano Aff. Plaintiff was

---

[1] The Affirmation of Christine Tramontano is referred to herein as "Tramontano Aff."

required to serve JetBlue with a Complaint within twenty-five days of the Demand (CPLR §

3012(b))—by April 28, 2008.

Plaintiff did not timely serve her complaint.  On May 6, 2008, after the expiration of

Plaintiff's time to serve a complaint, Plaintiff's counsel, Mr. Hudson, advised counsel for JetBlue

that he had been unable to contact his client and would, therefore, need until the end of that week

(or May 9) to serve JetBlue with a complaint.  Tramontano Aff. ¶ 3.  Mr. Hudson also stated that

he had prepared a motion to extend the time to serve and that if JetBlue agreed not to oppose the

motion, he would agree to give JetBlue additional time to serve an answer.  *Id.*  JetBlue agreed,

upon the understanding that Plaintiff would serve JetBlue with a complaint on or before May 9,

2008 and that JetBlue would have an additional 45 days beyond the time permitted under the

CPLR to answer or move.  Ex. B to Hudson Aff.  On or about May 8, 2008, Plaintiff, served

JetBlue with a motion seeking leave to file and serve a complaint by June 16, 2008.  Tramontano

Aff. ¶ 6.  The motion was returnable June 4, 2008, but the Court adjourned the return date *sua*

*sponte* to June 24, 2008.  *Id.*

On June 21, 2008, Mr. Hudson e-mailed to counsel for JetBlue a copy of correspondence

that he had sent to the Court via overnight mail advising the Court that he was unable to appear

on June 24, 2008 and requesting that no appearance be required on the basis that JetBlue had

agreed not to oppose the Original Motion.  Ex. C to Hudson Aff.  Having not heard from the

Court as to whether it would waive its requirement that the parties appear, counsel for JetBlue

appeared before the Court on the June 24, 2008 return date and advised the Court that JetBlue

was not opposing Plaintiff's Original Motion.  Tramontano Aff. ¶ 7.  Nonetheless, this Court

denied Plaintiff's request to serve a complaint beyond the time required by the CPLR, finding

that Plaintiff's Original Motion fell short of meeting her burden of asserting a meritorious cause of action. Ex. 3 to Tramontano Aff.

Plaintiff now seeks leave to reargue her Original Motion on the basis that the Court did not consider JetBlue's agreement not to oppose her Original Motion, a fact completely unrelated to Plaintiff meeting her burden of asserting a meritorious cause of action. Plaintiff also seeks leave to renew her Original Motion on the basis of "new" evidence, namely Plaintiff's airline ticket, additional newspaper articles, and Plaintiff's October 2, 2008 verified complaint.

## SUMMARY OF ARGUMENT

Plaintiff's motion for leave to reargue or to renew must be denied because it is futile. In her Original Motion, Plaintiff was required to establish two elements: (1) that she had a meritorious claim; and (2) that she had a reasonable excuse for her delay in serving a complaint. Plaintiff established neither, and this Court properly denied Plaintiff's Original Motion. Plaintiff now moves for leave to reargue or to renew on the basis of evidence that this Court allegedly "overlooked" or on the basis of "new" evidence of which the Plaintiff was allegedly unaware at the time of the Original Motion. Both claims are specious; the Court "overlooked" nothing of relevance, and calling the information cited by Plaintiff as "new evidence" is an insult to the words "new" and "evidence."

Neither JetBlue's agreement to not oppose the Original Motion, nor additional hearsay newspaper articles, nor Plaintiff's ticket establish either of the two elements Plaintiff was required to establish. Plaintiff's offer of a verified complaint in support of her motion to reargue, besides being available at any time, satisfies, at best, only one element that Plaintiff had to establish; even if the verified complaint is viewed as proof of a meritorious claim, Plaintiff to

3

this day has never met her burden in showing a reasonable excuse for delay in serving a complaint.

Plaintiff's motion for leave to reargue or to renew must be denied also on the grounds that it is not based on the sort of evidence that can revive a motion by reargument or renewal. The JetBlue agreement upon which Plaintiff relies was never offered on the Original Motion and is a complete red herring. And because Plaintiff could have provided the verification, newspaper articles, and ticket previously but did not, they cannot serve as the basis of a motion for leave to renew.

Finally, Plaintiff's motion must be denied on the basis that it is untimely. She was required to make her motion for leave to reargue by October 24, 2008, and did not make her motion until November 8, 2008[2]. Plaintiff's motion for leave to renew is likewise time-barred, because as discussed below, it is in actuality a motion for leave to reargue.

## ARGUMENT

### POINT I

**PLAINTIFF'S MOTION FOR LEAVE TO REARGUE OR RENEW IS FUTILE BECAUSE THE EVIDENCE SHE NOW OFFERS WOULD NOT CHANGE THE OUTCOME OF PLAINTIFF'S ORIGINAL MOTION**

**A. This Court Correctly Applied the Law and Denied Plaintiff's Original Motion**

In her Original Motion, Plaintiff sought leave to serve a complaint beyond the time required by C.P.L.R. § 3012(b), which requires a plaintiff who commences an action by the filing and service of a summons with notice to serve a complaint within 20 days after the

---

[2] It is unclear when exactly Plaintiff's motion was made. Plaintiff served JetBlue with her Motion along with an Affirmation of Service stating that Plaintiff served the Motion via mail on November 8, 2008. On November 12, 2008, however, counsel for JetBlue received a notice from the Court stating that the Plaintiff's Motion was sent back to Plaintiff's counsel and apparently rejected by the Court Clerk. On November 19, 2008, Plaintiff's counsel sent via e-mail to counsel for JetBlue an "Amended Notice of Motion." *See* Ex. 4 to Tramontano Aff.

defendant serves a demand for a complaint. In order to be granted the relief she sought, Plaintiff was required to (1) demonstrate the existence of a reasonable excuse for the delay; and (2) make a prima facie showing of legal merit by providing the court with an affidavit of merit or a verified complaint. *Corrado v. Bendell*, 93 A.D.2d 876, 877, 461 N.Y.S.2d 426, 427 (2d Dep't 1983); *A & J Concrete Corp. v. Arker*, 54 N.Y.2d 870, 871, 444 N.Y.S.2d 905, 906 (1981). In her Original Motion, Plaintiff failed to demonstrate a reasonable excuse for the delay in serving a complaint, and she failed to submit an affidavit of merit or a verified complaint. The Court, therefore, correctly applied the law and denied Plaintiff's Original Motion.

In the Affirmation of Counsel dated May 6, 2008[3] submitted in support of Plaintiff's Original Motion, Plaintiff's counsel set forth three reasons for Plaintiff's failure to serve a complaint: (1) law office failure; (2) his and Plaintiff's intensive work and travel schedules; and (3) Plaintiff's need to research specific expenses incurred. May 6 Hudson Aff. ¶¶ 3, 4. None of these excuses were legally sufficient reasons for Plaintiff's delay in serving JetBlue with a complaint.

Plaintiff's empty claim of law office failure in misfiling JetBlue's Demand is undercut by the claim of Plaintiff's counsel that he was attempting to contact the Plaintiff for purposes of preparing the complaint even before JetBlue served its Demand for a Complaint, but she was allegedly on vacation and did not respond. May 6 Hudson Aff. ¶4. Counsel's alleged misfiling of JetBlue's Demand did not cause Plaintiff's failure to timely serve a complaint; rather, it was Plaintiff's non-responsiveness to her counsel's attempts to contact her that caused the delay, which is not a valid excuse for her failure to serve a complaint within the time required by the CPLR.

---

[3] The May 6, 2008 Affirmation of Paul S. Hudson is referred to herein as "May 6 Hudson Aff."

It is well established that neither Plaintiff's nor her counsel's work and travel schedules is an acceptable excuse for Plaintiff's delay in serving a complaint. *Caton v. Schenectady Gazette*, 82 A.D.2d 949, 949, 440 N.Y.S.2d 760, 760 (3rd Dep't 1981) (holding that the impairment of close communication between a Florida client and a New York attorney was no excuse for delay in failing to timely serve a complaint); *Egan v. Federated Department Stores, Inc.*, 108 A.D.2d 718, 720, 484 N.Y.S.2d 883, 886 (2d Dep't 1985) (holding that *plaintiff's extended summer vacation*, which allegedly precluded counsel from contacting plaintiff with respect to the preparation of the complaint, as well as the *attorney's temporary misplacement of the file* were two of multiple *unacceptable excuses* for delay in serving a complaint).

And Plaintiff's conclusory assertion that an investigation was necessary before a complaint could be drafted was not a valid excuse for delay in serving a complaint, especially since such assertion was in no way supported by the record. *See Egan*, 108 A.D.2d at 719, N.Y.S.2d at 885. Plaintiff, therefore, failed to establish that she had a reasonable excuse for delay in serving a complaint.

Plaintiff's Original Motion was also deficient in that Plaintiff failed to submit an affidavit of merit or a verified complaint to show that she had a meritorious action. Rather, her counsel submitted an attorney affirmation stating that *he* investigated her claims and that *he* believed them to be of merit. May 6 Hudson Aff. ¶ 8. In support of his belief of a meritorious action, Plaintiff's counsel submitted newspaper articles and a proposed complaint signed by him and not verified by the Plaintiff. May 6 Hudson Aff. ¶¶ 7, 8. The law is clear that the showing of a meritorious claim must be satisfied by an affidavit of merit, or a verified complaint, containing evidentiary facts and attested to by individuals with personal knowledge of those facts—it cannot be satisfied by an attorney affirmation. *A & J Concrete Corp.*, 54 N.Y.2d at 871, 444 N.Y.S.2d

at 906; *Barasch v. Micucci*, 49 N.Y.2d 594, 600, 427 N.Y.S.2d 732, 734-35 (1980); *Amodeo v. Gellert and Quartararo, P.C.*, 26 A.D.3d 705, 706, 810 N.Y.S.2d 246, 247-48 (3d Dep't 2006); *Marion v. Notre Dame Academy High School*, 133 A.D.2d 614, 615, 519 N.Y.S.2d 721, 722 (2d Dep't 1987); *Block v. New York City Health and Hospitals Corp.*, 78 A.D.2d 690, 691, 432 N.Y.S.2d 521 (2d Dep't 1980).  Plaintiff's assertion that the Court can rely on hearsay materials and, in essence, take judicial notice of the alleged merit of Plaintiff's claims has no support in the law.

This Court correctly applied the law and found that Plaintiff's failure to establish a meritorious cause of action by offering either an affidavit of merit or a verified complaint was fatal to her Original Motion.

**B. The Evidence Plaintiff Now Offers Does Not Entitle Plaintiff to the Relief she Sought in her Original Motion**

None of the evidence that Plaintiff offers in support of her motion for leave to reargue or to renew would entitle her to the relief she sought in her Original Motion.  Although she now offers a verified complaint in support of her motion for leave to reargue, it does not remedy Plaintiff's deficient showing of a reasonable excuse for delay in serving a complaint.  Neither do the additional newspaper articles nor Plaintiff's ticket.  Further, Plaintiff's reliance on JetBlue's agreement to not oppose her Original Motion is puzzling.  That JetBlue did not oppose the Original Motion did not obviate the separate judicial elements that Plaintiff was required to establish or authorize this Court to disregard the law.  This Court denied Plaintiff's Original Motion because the evidence Plaintiff submitted did not meet the burden imposed upon her.  JeBlue did not agree, nor could it agree, to this Court granting Plaintiff relief upon a legally insufficient pleading.

The e-mail agreement, additional newspaper articles, ticket, and verification page Plaintiff proposes to offer on reargument or renewal do not warrant a different result. Plaintiff's motion for leave to renew or to reargue is futile and must be denied. *Laxrand Const. Corp. v. R.S.C.A. Realty Corp.*, 135 A.D.2d 685, 686, 522 N.Y.S.2d 584 (2d Dep't 1987); *Hassell v. New York University Medical Center*, 48 A.D.3d 632, 633, 852 N.Y.S.2d 342, 343 (2d Dep't 2008).

## POINT II

### PLAINTIFF'S MOTION FOR LEAVE TO REARGUE IS WITHOUT MERIT BECAUSE SHE RELIES SOLELY ON FACTS THAT SHE DID NOT OFFER ON THE ORIGINAL MOTION

Plaintiff's motion for leave to reargue must be denied because she relies solely on evidence that was not submitted with her Original Motion. Pursuant to CPLR 2221(d)(2), a motion for leave to reargue

> shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, *but shall not include any matters of fact not offered on the prior motion.* (emphasis added).

In support of her motion for leave to reargue, Plaintiff argues that the Court "overlooked" JetBlue's e-mail agreement to not oppose her Original Motion, which her counsel mailed to the Court after the Original Motion was filed. Pl. Mem. 5.; Affirmation of Paul S. Hudson ("Hudson Aff.") ¶ 3(c).[4]

This Court did not overlook the irrelevant e-mail agreement. Rather Plaintiff did not offer it on her Original Motion. Plaintiff's counsel essentially argues that he should not have been required to properly submit the e-mail agreement because he is accustomed to practicing in the courts of the Third Department and it was reasonable for him not to have known about the

---

[4] The Court was well aware that JetBlue a not oppose the motion—counsel for JetBlue advised the Court of this fact on the return date of the Original Motion, and JetBlue, indeed, did not oppose the motion. Tramontano Aff. at ¶ 6.

"anomaly" of how motion papers are submitted to this Court. Pl. Mem. 6. To that, JetBlue states, "Enough." Counsel's having failed to familiarize himself with the Rules of this Court and having failed to submit this "evidence" with Plaintiff's Original Motion does not amount to the Court overlooking or misapprehending matters of fact in deciding the Original Motion; rather, it simply converts Plaintiff's cause of action into one against her own law firm. The CPLR plainly states that a motion for leave to reargue "shall not include any matters of fact not offered on the prior motion." C.P.L.R. § 2221(d)(2). Because the e-mail agreement was not submitted with the Original Motion, it cannot form the basis of a motion for leave to reargue.

## POINT III

### PLAINTIFF'S MOTION TO FOR LEAVE TO RENEW IS WITHOUT MERIT BECAUSE IT BASED UPON FACTS THAT WERE KNOWN TO OR AVAILABLE TO PLAINTIFF AT THE TIME OF THE FILING OF HER ORIGINAL MOTION

Pursuant to CPLR 2221(e)(2), a motion for leave to renew "shall be based upon new facts not offered on the prior motion that should change the prior determination...." In the Second Department, "[a] motion for leave to renew must be supported by *new or additional facts* which, although *in existence at the time of the prior motion*, were *not known to the party* seeking renewal, and, consequently, were not made known to the court." *Jacobs v. Sabo*, 17 A.D.3d 321, 791 N.Y.S.2d 835 (2d Dep't 2005) (emphasis added); *Feldstein v. Rounick*, 295 A.D.2d 400, 743 N.Y.S.2d 736, 737 (2d Dep't 2002); *Louros v. Parmiter*, 288 A.D.2d 273, 274, 732 N.Y.S.2d 888 (2d Dep't 2001). Where the facts presented on the a motion for leave to renew were available at the time of the making of the original motion, the motion should be denied if the party seeking leave fails to provide an adequate excuse for her failure to offer the evidence on the original motion. *Hassell v. New York University Medical Center*, 48 A.D.3d 632, 633, 852 N.Y.S.2d 342, 343 (2d Dep't 2008); *Wunsch v. Cerwinski*, 36 A.D.3d 612, 612-13, 828 N.Y.S.2d

9

157, 159 (2d Dep't 2007); *Louros*, 288 A.D.2d at 274, 732 N.Y.S.2d 888; *McNeill v. Sandiford*, 270 A.D.2d 467, 468, 705 N.Y.S.2d 610, 611 (2d Dep't 2000); *Shapiro v. State of New York*, 259 A.D.2d 753, 687 N.Y.S.2d 401 (2d Dep't 1999).

None of the evidence submitted in support of Plaintiff's motion to renew was unknown to or unavailable to Plaintiff at the time of the filing of her Original Motion and she does not even attempt to provide a reasonable excuse for her failure to submit them at that time. Plaintiff's failure to provide a verified complaint at the time of her Original Motion only underscores the Plaintiff's delay and confirms the sound decision of this Court denying Plaintiff leave to serve a complaint. The Plaintiff's verified complaint was not in existence at the time of the Original Motion—it is dated October 2, 2008, nearly five months after the filing of her Original Motion, and seems to have been created solely for the purpose of supporting the instant motion. Because Plaintiff did not create the verification until after this Court's decision on the Original Motion, and because Plaintiff presented no reasonable excuse for her failure to provide it at that time, it can not serve as the basis for Plaintiff's motion for leave to renew. *Jacobs v. Sabo*, 17 A.D.3d 321, 791 N.Y.S.2d 835 (2d Dep't 2005).

Similarly, the additional newspaper articles (which, as hearsay, are not facts admissible in any motion) and ticket that Plaintiff submitted in support of her motion for leave to renew are not "new" facts that were unknown to the Plaintiff at the time of the filing of her Original Motion. The newspaper articles, even if treated as facts, are all dated between February and March of 2007 and show that they were printed from the internet on March 4, 2008—before Plaintiff's Original Motion was ever filed. *See* Ex. D to Hudson Aff. They were not unknown to or unavailable to the Plaintiff at the time of the filing of her Original Motion, but instead are presented now, in cumulative fashion to supplement the previous inadmissible citations to hearsy

proffered by Plaintiff in the Original Motion.  Likewise, the Plaintiff's ticket was in existence at the time the Original Motion was filed and is not a piece of evidence that was unknown to the Plaintiff at that time.

Although Plaintiff's *counsel* may not have known of the existence of the ticket at the time of the filing of the Original Motion, the CPLR requires a motion to renew to be based upon evidence that was not known to *the party* seeking renewal.  That Plaintiff's counsel did not know of the existence of the ticket is irrelevant.  Plaintiff's failure to submit these materials with her original motion, and her failure to provide a reasonable excuse as to why she did not offer them at that time, warrants denial of her motion for leave to renew.  *Laxrand Const. Corp. v. R.S.C.A. Realty Corp.,* 135 A.D.2d 685, 686, 522 N.Y.S.2d 584 (2d Dep't 1987); *Jacob,* 17 A.D.3d 321, 791 N.Y.S.2d 835; *Feldstein,* 295 A.D.2d 400, 743 N.Y.S.2d at 737; *Louros,* 288 A.D.2d at 274, 732 N.Y.S.2d 888; *Hassell,* 48 A.D.3d at 633, 852 N.Y.S.2d at 343; *Wunsch,* 36 A.D.3d at 612-13, 828 N.Y.S.2d at 159; *Louros,* 288 A.D.2d at 274, 732 N.Y.S.2d at 888; *McNeill,* 270 A.D.2d at 468, 705 N.Y.S.2d at 611; *Shapiro,* 259 A.D.2d 753, 687 N.Y.S.2d.

## POINT IV

### PLAINTIFF'S MOTION FOR LEAVE TO REARGUE OR TO RENEW MUST BE DENIED BECAUSE IT IS UNTIMELY

Pursuant to CPLR § 2221(d)(3), a motion for leave to reargue must be made within 30 days after service of a copy of the Order with Notice of Entry.  On September 19, 2008 JetBlue served this Court's Order with Notice of Entry upon the Plaintiff via First Class Mail.  *See* Ex. 3 to Tramontano Aff.  Because service was made via First Class Mail, Plaintiff was afforded an additional 5 days to make her motion for leave to reargue, giving her until October 24, 2008 to make her motion.  But Plaintiff did not serve her motion until November 8, 2008.  *See*

Affirmation of Service of Paul S. Hudson dated November 8, 2008.  Plaintiff's motion for leave to reargue is untimely and must, therefore, be denied.

Finally, as discussed above, the evidence that Plaintiff presents in support of her motion for leave to renew were in existence or otherwise available to the Plaintiff at the time of the making of her Original Motion.  As a result, under the law of the Second Department, that branch of the Plaintiff's motion denominated as a motion to renew is actually a motion for leave to reargue.  *Jacondino v. Lovis*, 186 A.D.2d 109, 110, 587 N.Y.S.2d 696, 698 (2d Dep't 1993) (holding that the plaintiff's motion, although denominated as one for renewal, was in actuality a motion for reargument because it was based upon evidence that could have been obtained at the time of the original motion, and the plaintiffs offered no excuse for their failure to initially present this evidence).  Because Plaintiff's motion for leave to renew is in reality a motion for leave to reargue, it too, must be denied on the basis that it is untimely.

## JETBLUE'S CROSS-MOTION TO DISMISS

This Memorandum of Law is also submitted in support of JetBlue's Cross-motion to dismiss this action in its entirety and for JetBlue's costs incurred in opposing the Plaintiff's Motion for Leave to Renew or to Reargue her Original Motion.  Dismissal of this action is warranted due to the Plaintiff's sheer failure to meet the burden required of her in seeking the relief she sought on her Original Motion, which resulted in this Court's Order denying her leave to serve a complaint.  Moreover, as discussed above, the Plaintiff failed to meet her burden in seeking leave to renew or to reargue her Original Motion.  As a result, there can be no service of a complaint.  And without a complaint, there can be no action.

Accordingly, JetBlue's Cross-Motion should be granted, the Plaintiff's case should be dismissed and removed from the Court's docket, and JetBlue awarded its costs in bringing this Cross-Motion.

## CONCLUSION

For the aforementioned reasons, JetBlue respectfully requests that the Court deny Plaintiff's motion for leave to reargue or to renew her Original Motion, and grant JetBlue's Cross-Motion seeking dismissal of Plaintiff's action in its entirety, as well as costs incurred by JetBlue in bringing this Cross-Motion.

Dated: New York, New York
      December 1, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
      Christopher G. Kelly
      Christine Tramontano
      195 Broadway
      New York, New York 10007
      (212) 513-3200

      *Attorneys for Defendant JetBlue Airways Corporation*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHERINE BISCONE, Individually and on behalf of
all others similarly situated,

                       Plaintiff,

          -against-

JETBLUE AIRWAYS CORPORATION, et al.,

                    Defendants.

Index No. 3776/2008
IA Term, Part 7
Hon. Valerie Brathwaite Nelson

**AFFIRMATION**

### AFFIRMATION OF CHRISTINE TRAMONTANO
### IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO REARGUE/RENEW
### AND
### IN SUPPORT OF JETBLUE'S CROSS-MOTION TO DISMISS THE ACTION

**CHRISTINE TRAMONTANO, ESQ.** an attorney duly licensed to practice law in the

State of New York, affirms the truth of the following under penalties of perjury:

     1.      I am an associate with the law firm of Holland & Knight LLP, counsel to

defendant JetBlue Airways Corporation ("JetBlue") in the above-entitled action, and am fully

familiar with the facts and circumstances of the action. The statements made herein are believed

to be true. Information not based upon my personal knowledge is based upon matters believed to

be true as contained in correspondence, pleadings, conferences, and telephone conversations.

     2.      I submit this affirmation 1) in opposition to the motion filed by Plaintiff Katherine

Biscone ("Plaintiff") seeking an order granting leave to reargue or to renew a motion denied by

Order of this Court dated September 12, 2008; and 2) in support of JetBlue's cross-motion for an

order pursuant to CPLR § 3012(b) to dismiss the action for the inability of Plaintiff to serve

JetBlue with a complaint, and for JetBlue's costs incurred in making the cross-motion.

3.     The above-entitled action was commenced by the filing of a Summons with Notice on or about February 13, 2008. The Summons with Notice was served on JetBlue by serving the Division of Corporations of the State of New York's Department of State on February 25, 2008. Attached hereto as Exhibit 1 is a true and correct copy of the Summons with Notice Plaintiff served upon JetBlue.

4.     On April 1, 2008, JetBlue served by mail its Notice of Appearance and Demand for a Complaint. Plaintiff was required to serve JetBlue with a complaint within twenty-five days—by April 28, 2008. Attached hereto as Exhibit 2 is a true and correct copy of JetBlue's Notice of Appearance and Demand for a Complaint. Plaintiff failed to do so.

5.     On May 6, 2008, Plaintiff's counsel and the undersigned had a telephone conversation during which Plaintiff's counsel stated that he had been unable to contact his client in order to prepare a complaint within the required timeframe and that he would need until the end of that week to serve JetBlue with a complaint. Mr. Hudson also stated that he had prepared a motion to extend the time to serve and that if JetBlue agreed to not oppose the motion, he would agree to give JetBlue additional time to serve an answer. JetBlue agreed to not oppose Plaintiff's Original Motion, upon the understanding that Plaintiff would serve JetBlue with a complaint by May 9, 2008 and that JetBlue would have an additional 45 days beyond the time permitted under the CPLR to answer or move.

6.     On or about May 8, 2008, Plaintiff moved this Court for an order granting her leave to serve a complaint beyond the time required by the CPLR. Her motion was noticed for June 4, 2008, but was adjourned by the Court to June 24, 2008.

7.     On the return date of the Plaintiff's Original Motion, June 24, 2008, the undersigned appeared before the Honorable Justice Brathwaite-Nelson and advised the Court

2

that JetBlue was not opposing the Plaintiff's Motion.  The Court marked the Plaintiff's motion fully submitted with no opposition.  Plaintiff's counsel was not present.

8.      On September 12, 2008, this Court denied Plaintiff's motion seeking leave to serve a Complaint.  The Court's Order was entered on September 17, 2008, and served upon Plaintiff with Notice of its Entry on September 19, 2008.  Attached hereto as Exhibit 3 is a true and correct copy of this Court's Order dated September 12, 2008 with Notice of Entry.

WHEREFORE, your affirmant respectfully requests an order of this Court 1) denying Plaintiff's motion for leave to reargue or renew her motion denied by this Court's September 12, 2008 Order; and 2) granting JetBlue's cross-motion seeking dismissal of the Plaintiff's action in its entirety, together with the costs of this cross-motion, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 1, 2008

CHRISTINE TRAMONTANO

# 5833128_v2

3

State of New York - Department of State
Division of Corporations

Party Served:                                    Plaintiff/Petitioner:
 JETBLUE AIRWAYS CORPORATION                       BISCONE, KATHARINE


    JETBLUE AIRWAYS CORPORATION
    JIM HNAT
    118-29 QUEENS BLVD.
    FOREST HILLS,  NY 11375


    Dear Sir/Madam:
    Enclosed herewith is a legal document which was served upon the Secretary of
    State on 02/25/2008 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
     This copy is being transmitted pursuant to such statute to the address
    provided for such purpose.


                                                     Very truly yours,
                                                  Division of Corporations

*Index #3776/2008*

STATE OF NEW YORK QUEENS COUNTY
SUPREME COURT    CLERKS OF QUEENS COUNTY    INDEX NO.
                 RECEIVED

2008 FEB 13 P 1: 17

KATHARINE BISCONE,
individually and on behalf of all others similarly situated,

                        Plaintiff,

                                        SUMMONS WITH NOTICE

    -against-

JETBLUE AIRWAYS CORPORATION, and Does "1" through "20",

                        Defendants.

_____

To the above mentioned defendant:

        You are hereby summoned to appear in this action by serving notice on plaintiff's
attorney within twenty days after service of this summons, exclusive of the day of
service, or within thirty days after service is complete if this summons is not personally
delivered to you within the State of New York.

        Take notice that the object of this action and relief sought is to recover damages
for false or wrongful imprisonment, emotional distress, negligence, gross negligence,
fraud, deceit, prima facie tort, and breach of contract arising out confinement of Plaintiff,
a resident of New York State, and other similarly situated JetBlue passengers, by
Defendant(s) in aircraft under the control of Defendant(s) at JFK Airport on February
14th, 2007 in excess of four hours, and that in case of your failure to appear judgment
will be taken against you in the amount by default in the amount of Fifty Million Dollars
($50,000,000.00), plus exemplary or punitive damages in an amount to be determined by
the court, plus costs and disbursements of this action and attorneys' fees as provided by
law.
        The basis for venue designated is that Queens County is the principal place of
business of the named Defendant and the location of the incident complained of.

Dated: February 12, 2008                *Paul Hudson*
                                        _____
                                        Paul S. Hudson, Esq.
                                        Law Offices of Paul S. Hudson PC
                                        Attorney for Plaintiff
                                        Address:  4411 Bee Ridge Road #274
                                        Sarasota, Florida 34233
                                        Telephone No.:  410-940-8934
                                                        941-349-1947

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHARINE BISCONE,
individually and on behalf of all others similarly situated

Plaintiff,

-against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
through "20",

Defendants.

Index No. 3776/2008

**NOTICE OF APPEARANCE**
**AND**
**DEMAND FOR COMPLAINT**

**PLEASE TAKE NOTICE** that defendant JetBlue Airways Corporation, appearing by its
attorneys Holland & Knight LLP, hereby demands pursuant to Section 3012(b) of the New York
Civil Practice Law and Rules that a copy of the complaint be served upon Holland & Knight
LLP,  at 195 Broadway, New York, New York 10007.

Dated: New York, New York
     April 1, 2008

HOLLAND & KNIGHT LLP

By: _____
    Christopher G. Kelly
    Christine Tramontano
195 Broadway
New York, New York  10007
(212) 513-3200

*Attorneys for Defendant JetBlue Airways*
*Corporation*

TO:    Paul Hudson, Esq.
       Law Offices of Paul S. Hudson PC
       *Attorney for Plaintiff*
       4411 Bee Ridge Road #274
       Sarasota, FL 34233
       (410) 940-8934
       (941) 349-1947

# 5238328_v1

## ATTORNEY'S AFFIRMATION OF SERVICE VIA MAIL

State of New York   )
                  ) SS.:
County of New York )

      RUDY D. GREEN, an attorney admitted to practice in the Courts of the State of New

York, affirms under penalty of perjury:

      That on April 1, 2008, I served the attached Notice of Appearance and Demand for

Complaint, by mailing true copies of the same in a duly enclosed and sealed wrapper with first-

class postage prepaid thereon and addressed to:

    Paul Hudson, Esq.
    4411 Bee Ridge Rd.
    #274
    Sarasota, FL  34233


_____
RUDY D. GREEN

Dated: April 1, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHERINE BISCONE, Individually and on behalf of
all others similarly situated,

                                    Plaintiff,

            -against-

JETBLUE AIRWAYS CORPORATION, et al.,

                                Defendants.

Index No. 3776/2008
IA Term, Part 7
Hon. Valerie Brathwaite Nelson

**NOTICE OF ENTRY**

      PLEASE TAKE NOTICE that the within is a true copy of an Order duly made and

entered in this action and filed in the Office of the Clerk of the Supreme Court of the State of

New York, County of Queens on September 17, 2008.

Dated:  New York, New York
          September 19, 2008

                                 HOLLAND & KNIGHT LLP

                                 By
                                     Christopher G. Kelly
                                   Christine Tramontano
                                  Attorneys for Defendant
                                  195 Broadway
                                  New York, New York 10007
                                  (212) 513-3200

TO:    Paul S. Hudson, Esq.
       12 Ressler Lane
       Valatie, NY 12184
       (518) 610-8288

       Paul S. Hudson, Esq.
       4411 Bee Ridge Road #274
       Sarasota, FL 34233
       (410) 940-8934
       *Attorney for Plaintiff*

QUEENS COUNTY CLERK
FILED
2008 SEP 23 AM 9:00

# 5619485_v1

2008/3776 COPY OF ORDER W/NOTICE OF ENTRY ... E-FILING

# ORIGINAL

Short Form Order

NEW YORK SUPREME COURT - QUEENS COUNTY

Present: Honorable <u>VALERIE BRATHWAITE NELSON</u> IA TERM, PART 7
Justice

```
-----------------------------------------x
```
KATHERINE BISCONE, Individually and on
behalf of all others similarly situated,              Index No.: 3776/08

                                                      Motion: 6/24/08

                          Plaintiff,                  Motion Seq. No.: 1

        -- against --
                                                      Cal. No.: 4

JETBLUE AIRWAYS CORPORATION, et al.,

                          Defendants.
```
-----------------------------------------x
```
The following papers numbered 1 to 4 read on this motion by
plaintiff for an order granting her leave to file and serve a
complaint pursuant to CPLR §§§ 3012(d), 2004 and 2005.

                                                       PAPERS
                                                       NUMBERED

     Notice of Motion - Affidavits - Exhibits........ 1 - 4

     Upon the foregoing papers, it is ordered that this motion is
denied for the following reasons:

     Plaintiff served a summons with notice in this matter on
February 25, 2008. Thereafter defense counsel served a demand for
a complaint on or about April 1, 2008. Having failed to serve a
complaint within the time provided by statute, plaintiff moves
pursuant to CPLR §§§ 3012(d), 2004 and 2005 for additional to time
file and serve a complaint. A plaintiff who seeks to serve a
complaint after the expiration of the 20-day statutory period must
demonstrate that there was a reasonable excuse for the delay and a
meritorious cause of action (<u>Tutora v Schirripa</u>, 1 AD3d 349[2003]).
Generally, the court's determination of what constitutes a
reasonable excuse is discretionary (<u>Aguilar v Nassau Health Care
Corp.</u>, 40 AD3d 788[2007]). In exercising its discretion, however,
the court should consider all relevant factors, including the
extent of the delay, the prejudice to the opposing party and the
lack of intent to abandon (Id). Nonetheless, under the appropriate
circumstances, it is within the court's discretion to excuse delays

in serving a complaint due to law office failure (<u>Devito v Marine
Midland Bank</u>, 100 AD2d 530 [1984]). Plaintiff's counsel indicates
that the intensive work and travel schedules of both himself and
his client prevented the timely filing and service of the
complaint. Even if this Court were inclined to find that the excuse
offered for the delay in filing and serving the complaint was
reasonable, plaintiff failed to demonstrate the existence of a
meritorious claim. An attorney's affirmation that is not based upon
personal knowledge is of no probative or evidentiary significance
(<u>JMD Holding Corp v Congress Fin. Corp.</u>, 4 NY3d 373 [2005]).
Similarly, the newspapers' accounts of the underlying incident are
not sufficient to demonstrate the merit of plaintiff's claims.
Accordingly, the motion is denied.

Dated: 9/12/08

............................................
VALERIE BRATHWAITE NELSON, J.S.C.

QUEENS COUNTY CLERK
FILED
2008 SEP 17  AM 11:33

2

## ATTORNEY'S AFFIRMATION OF SERVICE VIA U.S. MAIL

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK  )

      CHRISTINE TRAMONTANO, an attorney duly admitted to practice law before the

courts of the State of New York, affirms under penalty of perjury, that on September 19, 2008, I

served the within NOTICE OF ENTRY on

> Paul S. Hudson, Esq.
> 12 Ressler Lane
> Valatie, NY 12184
>
> Paul S. Hudson, Esq.
> 4411 Bee Ridge Road #274
> Sarasota, FL 34233
> *Attorney for Plaintiff*

by depositing a copy of the same in a securely sealed wrapper, with postage prepaid thereon, in a

post-office or official depository of the U.S. Postal Service within the State of New York.

Dated: New York, New York
      September 19, 2008

                                             CHRISTINE TRAMONTANO

# 5619506_v1

- 1 -

Short Form Order

NEW YORK SUPREME COURT - QUEENS COUNTY

Present: Honorable **VALERIE BRATHWAITE NELSON** IA TERM, PART 7
                                        Justice

-----------------------------------------x
KATHERINE BISCONE                                    Index No.: 3776/08
Individually and on behalf of all others
similarly situated,                                  Motion: 12/9/08

                        Plaintiff,                   Motion Seq. No.: 2

            -- against --                            Cal. No.: 4

JETBLUE AIRWAYS CORPORATION and Does"1"
Through "20",

                        Defendants.

-----------------------------------------x
     The within motion and cross-motion, which both seek relief as
a result of the plaintiff's failure to serve a complaint within the
time prescribed by the CPLR, are set down for a conference in Part
7 of this Court on March 10, 2009 at 11:30 a.m. Plaintiff is
directed to serve a copy of this order by first class mail, upon
the defendants on or before February 27, 2009. Plaintiff shall
submit to the Court an affidavit of service reflecting that service
has been completed in compliance with this order at the conference
on March 10, 2009.


Dated:                          ...................................
                                VALERIE BRATHWAITE NELSON, J.S.C.

STATE OF NEW YORK
SUPREME COURT          QUEENS COUNTY          INDEX NO. 3776/2008

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,

                                                   **NOTICE OF ENTRY**

          -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.


PLEASE TAKE NOTICE that on July 2, 2009, the enclosed Order signed by the Hon.
Valerie Brathwaite Nelson, J.S.C. on June 25, 2009 was filed in the Office of the Queens
County Clerk, 88-11 Sutphin Blvd., Jamaica, New York 11435.


July 11, 2009                    _s/_____
                                 Paul S. Hudson, Esq.
                                 Attorney for Plaintiff
                                 4411 Bee Ridge Rd. #274
                                 Sarasota, Florida 34233
                                 (941) 349-1947  410-940-8934

TO:  Christine Tramontano, Esq.
Holland & Knight
195 Broadway
New York, NY 10007

**ORIGINAL**

Short Form Order

NEW YORK SUPREME COURT - QUEENS COUNTY

Present: Honorable **VALERIE BRATHWAITE NELSON** IA TERM, PART 7
Justice

-----------------------------------------x

KATHERINE BISCONE,

                       Plaintiff,

    -- against --

JET BLUE AIRWAYS CORPORATION, and Does
"1" Through "20".

                      Defendants.

-----------------------------------------x

Index No.: 3776/08

Motion: 12/9/08

Motion Seq. No.:

Cal. No.: 4

*QUEENS COUNTY CLERK FILED 2009 JUL -2 AM 9: 29*

The following papers numbered 1 to 16 read on this motion by the
plaintiff for leave to renew and/or reargue a motion dated May 6,
2008 submitted without opposition on June 24, 2008 and denied in an
order dated September 12, 2008 and upon the cross-motion of the
defendant for an order dismissing this action in its entirety
pursuant to CPLR §3012(b).

                                     PAPERS
                                   NUMBERED

      Notice of Motion - Affidavits - Exhibits......... 1 - 6
      Notice of Cross-Motion - Affidavits - Exhibits... 7 - 13
      Reply Affidavits - Exhibits..................... 14 - 16

    Upon the foregoing papers it is ordered that the motion and
cross-motion are determined as follows:

    The court in its discretion may grant renewal, in the
interests of justice, upon facts that were not known to the movant
where the movant offers reasonable justification for failing to
submit them on the earlier motion (see CPLR §2221(e)(2),(3); Heaven
v. McGowan, 2007 NY Slip Op. 03883.; O'Connell v. Post, 27 AD3d 631
[2006]; Renna v. Gullo, 19 AD3d 472 [2005]. However, "the
requirement that a motion for leave to renew be based upon newly-
discovered facts is a flexible one and a court, in its discretion,
may grant renewal upon facts known to the moving party at the time
of the original motion(Lawman v Gap, Inc., 38 Ad3d 852[2007]citing
Gadson v New York City Hous. Author., 263 AD2d 464]). Plaintiff

Case 1:09-cv-03533-ILG-MDG   Document 1   Filed 08/13/09   Page 103 of 122

forwarded to the Court by mail evidence of a stipulation between
the parties consenting to acceptance of a late complaint.  Said
evidence, however, was returned to plaintiff without being reviewed
by the Court as the rules of IAS Part 7 direct that all papers
submitted in support and/or in opposition to a motion be submitted
in the courtroom at the call of the court's motion calendar.
Inasmuch as the plaintiff has now properly submitted evidence of
the parties stipulating to the relief sought herein, the motion for
leave to serve and file a late complaint is granted upon renewal.
Plaintiff is directed to serve and file the complaint in the form
annexed to the moving papers within twenty days of entry of this
order.  Defendant's cross-motion is denied.


Dated: 6/25/09

.......................................
VALERIE BRATHWAITE NELSON, J.S.C.


QUEENS COUNTY CLERK
FILED
2009 JUL -2  AM 9: 29


2

NEW YORK STATE SUPREME COURT
QUEENS COUNTY                                    INDEX NO. 3776-08

---

KATHARINE BISCONE, Individually and
On behalf of all others similarly situated,

                                        Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION, and
Does "1" through "20",

                                        Defendant.

---

**AFFIRMATION OF SERVICE**

Paul S. Hudson, an attorney admitted to practice in the courts of New York State does

affirm under penalty of perjury that on July 11, 2009, he mailed by first class mail a copy

of the within Notice of Entry with a true copy of the Order filed July 2, 2009 attached to

Holland & Knight, Christine Tramantano, Attorneys for the Defendant, 195 Broadway,

New York, New York 10007, and also by electronic mail to

Christine.Tramontano@hklaw.com .

Dated:  July 11, 2009

Sarasota, Florida                      __s/_____
                                       Paul S. Hudson, Esq.
                                       Law Offices of Paul S. Hudson, PC
                                       4411 Bee Ridge Road #274
                                       Sarasota, Florida 34233
                                       410-940-8934  941-349-1947
                                       Globetrotter1947@hotmail.com

STATE OF NEW YORK
SUPREME COURT        QUEENS COUNTY        INDEX NO. 3776/2008

---

KATHARINE BISCONE,
Individually and on behalf of all others similarly situated,

                              Plaintiff,                    **COMPLAINT**

        -against-

JETBLUE AIRWAYS CORPORATION, and Does "1"
Through "20",

                              Defendants.

---

As and for a Complaint, Plaintiff Katharine Biscone, on behalf of herself and all others

similarly situated, by and through her attorney Paul S. Hudson does allege as follows:

### Parties and Jurisdiction

1. Plaintiff is and was for all times relevant to this action a citizen of the United States

and of the State and City of New York, residing at East 20th Street, City and County of

New York.

2. Defendant JetBlue Airways Corporation (hereinafter "JB") is a business corporation

and a common carrier offering scheduled air transportation to the general public, was

incorporated in the State of Delaware and has its principal place of business in the State

of New York, County of Queens.  At all times relevant to this action Defendants were

doing business in the State of New York.

## Class Action Allegations

3.. This action is being maintained as a class action pursuant to the New York Civil Practice Law and Rules Art. 9. In that regard, the Plaintiff alleges the following:

a. Approximately 1,300 people were affected by the actions of the Defendants as set forth below and therefore the class is so numerous that joinder of members is impracticable;

b. There are common issues of law and fact that predominate over any questions affecting only individual members;

c. The claims of Katharine Biscone as a representative party are typical of the claims of the class;

d. Katharine Biscone has agreed to serve as class representative and has agreed to fairly and adequately protect the interests of the class;

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4. In support of the class action allegations, Plaintiff incorporates by reference the statements and allegations that follow.

## Factual Allegations and Events of February 14, 2007

5. . Plaintiff purchased a ticket for air transportation from JB in New York on JB flight 351 scheduled to depart from John F. Kennedy International Airport (JFK), at 6:45 AM to Burbank, California.

6.     Plaintiff arrived at the JetBlue Terminal at JFK at about 4:45 AM on February 14, 2007, checked in and boarded the aircraft at 6:15 AM.

7.  At approximately 6:30 AM all passengers were boarded and the JB aircraft pulled away from the terminal gate at approximately 6:50 AM.

8.  From 6:50 AM to approximately 5:30 PM, Plaintiff was confined to the JB aircraft on the ground at JFK.

9.  JB personnel for the first three hours, stated that the weather was "holding us up."

10.  For the first 5 hours, Plaintiff was forced by Defendants to remain in her seat with her seat belt fastened: during which time JB personnel claimed this was necessary so that the aircraft could take off on 5 minutes notice.

11. Plaintiff observed numerous other aircraft returning to the terminal gates during this first 5 hour period and subsequent thereto.

12. After 5 hours of confinement on the ground, JB personnel stated that if anyone wanted to get off the plane and take another flight, to let the crew know.

13. Another passenger nearby to Plaintiff rang his flight attendant call button to request to exit the aircraft, however, the flight attendant bullied and intimidated him to stay on the plane by stating that if he got off the aircraft JB would not help him get another flight, that he would not be able to get another flight until the weekend several days later.

14. When passengers demanded to be released from the aircraft, JB personnel refused and stated to Plaintiff and other passengers that if anyone tried to force their way off the aircraft, they would go to prison for 20 years because of the Patriot Act.

15. JB personnel stated numerous times that during the 11 hours of confinement that Plaintiff's aircraft was "next in line" for a gate to return to the terminal and stated the aircraft would return to the terminal or take off soon, but this never occurred.

16. During the 11 hours of confinement, JB only served a few snacks after 3 hours and after 8 hours, and very small amounts of water.

17. After approximately 8 hours of confinement, the aircraft Heating, Cooling and Ventilation system shut down and the air became sweltering and it became difficult for some passengers and Plaintiff to breathe.

18. After approximately 10 hours, the JB captain stated to Plaintiff and other passengers, that the toilet tanks were full and "If you have to do a No. 2 in the bathroom, you cannot for the tanks are full and will overflow."

19.  After 10 hours, the JB captain announced that under FAA regulations the legal limit for that crew's flight time had been reached and that JB was locating another crew to take over the flight, however, no other flight crew appeared and after 11 hours buses arrived and took Plaintiff and other passengers to the terminal.

20.  Plaintiff and other passengers called JB reservations from the aircraft numerous times and also went on the JB website to re-book flights, but were refused reservations on other flights for at least three days and were not advised of any other alterative transportation.

21.  At the terminal, Plaintiff and other passengers were required to wait another 2 hours to obtain return of their baggage.

22.  JB, upon information and belief, was under no orders or requirements of any government agency to confine Plaintiff and did so for its own pecuniary benefit.

### Affects on Plaintiff and other passengers due to confinements

22a.  Plaintiff is a comedy writer in the television and motion picture industry, and she was traveling to California to attend her best friend's premier of a new motion picture her friend starred in on evening of February 15th, 2007, and this was a once in a lifetime event.

23. Plaintiff was also traveling to California to attend important meetings on February 15th and 16th, 2007.

24. Due to JB's actions Plaintiff was unable to obtain alternate transportation to attend her friend's premier or her business meetings and lost business opportunities that took over a year to arrange with a major television producer.

25. Plaintiff had had major shoulder surgery six months prior to February 14th, 2007, and her shoulder and hip flexors started to ache and her legs began cramping after about 4 hours of confinement.

26. Plaintiff was aware of the danger of blood clots after 4-5 hours of confinement on aircraft and suffered from mental distress, anxiety and near panic as she was forced by JB to remain in her seat for over 5 hours with her seatbelt fastened.

27. Plaintiff and other passengers suffered severe mental and physical distress as a result of JB's actions on February 14th, 2007.

28. After her 11 hour ordeal of confinement by JB, Plaintiff was broken in body and spirit, suffered physical pain for six months afterwards as well as panic and anxiety attacks whenever she is in crowded places for the first time in her life.

29.  Plaintiff was treated and incurred expenses for these conditions after and as a result of her ordeal of confinement by JB as follows:

a) For hips and shoulder:  5 muscle activation technique sessions: $775, Training sessions with a physical therapist- $95 per session for 20 sessions; physical therapy at the Hospital for Joint Diseases 15 sessions.

b) Psychiatric – 6 sessions at $225 per session, and expenses for medicine of over $600 over insurance reimbursements.

b) Lost earnings of approximately $30,000.

30.  Plaintiff witnessed numerous passengers in physical and emotional distress, including elderly persons, young mothers with infants, and others suffering potential mental crises requiring an emergency Alcoholics Anonymous meeting in the rear of the aircraft.

**As and for a first cause of action, False  Imprisonment**

30a. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 30 as if fully set forth herein.

31. JB intentionally confined Plaintiff and other similarly situated persons on approximately 10 aircraft for 3 to 11 hours on the ground at JFK on February 14th, 2007.

32. Plaintiff and others similarly situated were conscious of said confinement and were harmed by it.

33. Said confinement was not a transitory or harmless confinement and was unreasonable in the circumstances.

34. Said confinement was unlawful and not privileged.

35. Said confinement was not based on safety or security or other lawful considerations, but rather for the financial benefit to JB and its employees and to the detriment of Plaintiff and others similarly situated.

36. Said confinement was complete and Plaintiff and others similarly situated had not reasonable means of escape.

37. Said confinement after 3 hours was without the lawful consent of Plaintiff and others similarly situated.

38. JB wrongfully obtained acquiescence of Plaintiff and other passengers similarly situated by false pretenses, deceit, fraud or mistake and/or intimidation under threat of arrest.

39. Said confinement was not based on any federal aviation law or regulation, order or requirement but was solely done at the instigation of Defendants.

40. Said confinement was in violation of New York State criminal laws against reckless endangerment and false imprisonment including Penal Law Sections 135.05, 120.20 and General Business Law Sec. 245, and there is no federal law or regulation governing lengthy confinements on the ground of passengers by air carriers.

41. JB had the power to safely return passengers to the terminal but refused to do so.

42. JB is guilty of the tort of false imprisonment under the common law of the State of New York and under Restatement of Torts Second at Section 35 et seq.

43. As a direct result of the unlawful imprisonment of Plaintiff by Defendants, and the deprivation of her personal liberty and freedom in inhumane conditions, she has suffered physical injury to her body, mental suffering, inconvenience and out of pocket expenses and loss of earnings and business opportunities.

**As and for a second cause of action, Negligence**

43.   Plaintiff re-alleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

44.   Defendant JB as a common carrier owed a high duty of care for the safety and protection of its passengers including Plaintiff.

45.   This duty also created a special relationship between JB and Plaintiff and required JB to affirmatively aid and protect Plaintiff and others similarly situated against unreasonable risk of physical harm.

46.   This duty included not depriving Plaintiff and other similarly situated passengers of their personal liberty by confinement on the ground in an aircraft for a lengthy period of time without adequate water, food, restroom facilities and breathable air at proper temperatures.

47.   JB, its agents and employees in charge of Flight 351 and nine other flights held on the ground at JFK on February 14th, 2007, were aware of its passengers distress after 3 hours and the unlikelihood of it being able to take off due to weather conditions and its lack of personnel, but failed to return to the terminal, provide passengers with basic survival necessaries, or permit them to exit the aircraft using available buses and staircases.

48. Defendants' conduct was unreasonable and negligent and below the standard of care required of a common carrier.

48a. Defendant JB's CEO and founder David Neeleman admitted in public statements that JB did not telephone the JFK airport authority until 3:00 PM for buses and staircases to get stranded passengers off the aircraft and back to the terminal, and that "we should have called them sooner."

49. JB's conduct was reckless in that it risked the well being and safety of Plaintiff and other similarly situated passengers out of all proportion to the utility of providing for air transportation to Plaintiff and others similarly situated.

50. Defendants' conduct was the proximate cause of harm to Plaintiff and others similarly situated.

**As and for a third cause of action, Outrageous Conduct Causing Emotional Distress.**

51. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Defendants' conduct was extreme and outrageous, intentionally or recklessly causing severe emotional distress to Plaintiff and causing and/or aggravating bodily harm.

53. Plaintiff suffered from mental anguish, fright, anxiety, worry, chagrin, disappointment, panic attacks, pain and profuse sweating as a result of JB's conduct.

**As and for a fourth cause of action, Fraud and Deceit.**

54. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. JB controlled all information regarding flight delays and conditions and as such had a special relationship and duty to convey accurately material information to Plaintiff and others similarly situated.

56. JB under its Customer Service and Contract of Carriage had promised Plaintiff and others similarly situated that it would provide accurate and timely information on flight delays.

57. Defendant JB through its flight crew and operations employees (Defendant Does 1 - 20) on February 14, 2007 at JFK repeatedly represented to Plaintiff and others similarly situated that the aircraft would take off or return to the terminal gate shortly.

58. These representations were both material and false.

59. Defendants knew that these representations were false, or that they were being made with reckless disregard for their truth or falsity.

60. Defendants intended to deceive and induce Plaintiff others similarly situated to rely on these representations.

61. Plaintiff and others similarly situated reasonably relied on these false representations to their detriment.

62. Had Plaintiff and others similarly situated known the true facts, she would not have boarded the aircraft or at the worst been able to exit the aircraft after a few hours on the morning of February 14th, 2007 and arrange for alternate transportation to her destination the same day or the next day from several other east coast airports and/or another airline in time for her event and appointments the next day.

63. Plaintiff and others similarly situated sustained injury and loss as the proximate result of their reliance on these representations, and have been damaged thereby.

**As and for a fifth cause of action, Breach of Contract.**

64. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiff under its written contract was obligated to provide ticket refunds and other compensation to Plaintiff and other class members for its canceled flights including Flight 351 on February 14, 2007, and to provide other compensation, but failed to do so in large part.

66. As to class members who whose travel at JFK was part of an international trip, the Montreal Convention of 1999 supersedes the JB domestic contract of carriage as to liability for delays and provides for a damage liability limit of up to approximately $6,600 on a no fault basis. Copies of the contracts and the Montreal Convention are available and will be provided separately to the Defendant and the Court.

67. Defendant JB is guilty of breach of contract causing damage to Plaintiff and others similarly situated.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $74,000, individually and for an amount to be determined by the court but not to exceed $4,800,000 for all others similarly situated, including all compensatory and punitive damages

Dated: May 6, 2008

Paul S. Hudson, Esq.
Law Offices of Paul S. Hudson, PC
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934
Globetrotter1947@hotmail.com

VERIFICATION

Paul S. Hudson, an attorney in good standing in the State of New York, affirms under penalty of perjury that he has read the within complaint, that it is true to the best of his knowledge, that the reason that this verification is not made by Katharine Biscone is that he does not maintain an office in the County of Queens, counties adjacent to or the City of New York.

May 6, 2008

Sarasota, Florida                Paul S. Hudson

STATE OF NEW YORK

COUNTY OF New York

VERIFICATION

)
)          :ss.:
)

Katharine Biscone being duly sworn, says that she is the Plaintiff in the above-named action and that the foregoing complaint is true to her own knowledge, except as to matters stated to be alleged on information and belief and as to those matters she believes them to be true.

KATHARINE U. BISCONE

Plaintiff : type or print name          Signature

Sworn to before me this
2nd day of Oct, 2008

Notary Public

VALENTINE M. JONES
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN KINGS COUNTY
REG. NO.01JO3454-1074
MY COMM. EXP. APRIL 30, 20 10

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

KATHERINE BISCONE,
Individually and on behalf of all others similarly
situated,

                      Plaintiff,

              -against-

JET BLUE AIRWAYS CORPORATION, and
DOES 1 through 20,

                  Defendants.

Index No. 3776/2008
IA Term, Part 7
Hon. Valerie Brathwaite Nelson

**STIPULATION AND**
**ACKNOWLEDGMENT**
**OF SERVICE**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the attorneys of record for the parties to the above-captioned action, that the undersigned counsel for Defendant JetBlue Airways Corporation ("JetBlue") is authorized to accept service of a copy of the within Complaint on behalf of JetBlue.

IT IS HEREBY FURTHER STIPULATED AND AGREED, by and between the undersigned attorneys of record, that Plaintiff Katherine Biscone served Defendant JetBlue with a copy of the within Complaint via electronic mail to the undersigned counsel for JetBlue on July 15, 2009, and that such service is hereby acknowledged and shall be deemed proper service.

IT IS HEREBY FURTHER STIPULATED AND AGREED, by and between the undersigned attorneys of record, that the date by which JetBlue must answer, move, or otherwise respond to the Complaint shall be extended through and including September 18, 2009.

**IS HEREBY FURTHER STIPULATED AND AGREED**, that for the purposes of filing this Stipulation, signatures by facsimile should be considered the same as original signatures.

Dated: _____, _____
    February ___, 2009

By:_____
    Paul S. Hudson, Esq.

**LAW OFFICES OF PAUL S. HUDSON PC**
4411 Bee Ridge Road #274
Sarasota, FL 34233
(410) 940-8934
(941) 349-1947

Paul S. Hudson, Esq.
12 Ressler Lane
Valatie, NY 12184
(518) 610-8288
Globetrotter1947@hotmail.com
*Attorneys for Plaintiff Katherine Biscone*

# 8715352_v1

Dated: New York, New York
    July 15, 2009

By:_____
    Christopher G. Kelly, Esq.
    Christine Tramontano, Esq.

**HOLLAND & KNIGHT LLP**
195 Broadway, 24th Floor
New York, New York  10007
Tel.: (212) 513-3200
Fax: (212) 385-9010
Christine.Tramontano@hklaw.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*

2